LARUE & PREVOST V. RUGELY, BLAIR & CO.

Defendants sold to plaintiffs a lot of cotton and gave plaintiffs' broker an order on the press for its delivery. A few days afterwards plaintiffs paid $3,000 on account of the purchase, and the cotton was destroyed by fire, but before the pressman had turned out the cotton to be weighed. *Held:* that there was no delivery such as to put the cotton at the risk of the purchaser, and that plaintiffs had the right to recover back the part of the price paid.

APPEAL from the Second District Court of New Orleans.  *Lea,* J.

*P. E. Bonford* and *J. Finney* for plaintiffs.

*Elmore & King,* for defendants and appellants, cited Chitty on Contracts 113; 3d Ala. 698; 7 Ann. 372: C. C. 2452; 13th Pickering, 182.

SLIDELL, C. J.   On the 26th February 1853, *Larue & Prevost* purchased from the defendants 219 bales of cotton, then in a warehouse and press at New Orleans, called the Alabama Press.   On the afternoon of the same day, which was Saturday, defendants gave the purchasers' brokers a list of the marks of the bales, and at foot the following orders: "Alabama Press will please deliver the above lot of two hundred and nineteen bales cotton to Messrs. *Guerin* and *Sanchez.*   On the following Tuesday the brokers sent a clerk to have the cotton turned out for classing and marking, but the pressman having other cotton to turn out, said, he could not do so this day, and probably would be able to do so the next day. On the next day, being Wednesday, plaintiffs and their brokers made unsuccessful applications at the press, but there was a promise to comply on the following day.   On Wednesday, the defendants sent their clerk for $5,000, on account of the price.   Plaintiffs at first objected, on account of their failure to get the cotton turned out by the press, having engaged freight for it and being pressed by the ship broker; but after some discussion paid $3,000 on account. On the same afternoon, about 6 o'clock, the cotton not having yet been marked, classed, weighed, nor even turned out, it was destroyed by fire.   It appears from the evidence that the course of business at the press was for the purchaser's broker to present his orders, one, two, or three days after the purchase, and sometimes longer, have the cotton turned out by the pressman, and classed and marked by the broker or his clerks, and then the cotton is weighed by a weigher appointed by the seller.

The plaintiffs brought a suit to get back their advance of $3,000; defendants answered by a general denial, and also pleaded specially as follows: "Respondents alledge that on the 26th day of February, 1853, they sold to plaintiffs 219 bales of cotton, and gave their brokers an order on the Alabama Press for the same that plaintiffs were to pay respondents, 8 11-16 cents per pound for the said cotton.   That plaintiffs did not use due diligence to have the cotton turned out, marked, classed and weighed as they were bound to do, but permitted it to remain in the press where it was stored till Wednesday night, 2d March, when it was destroyed by fire.   Respondents show that by their negligence aforesaid, they became responsible for the loss of the cotton burnt as aforesaid.

Without enquiring whether such negligence as was pleaded would avail to throw the risk on the buyer without steps taken by the seller to put him distinctly in default, we deem it sufficient to say upon this point of the defence that negligence or a want of reasonable diligence on the part of the purchasers is not proved.

The case therefore turns upon the question whether there was, as asserted by the defendants, a shifting of the risk of the things sold, from the seller to the buyer, by reason of the facts proved, which it is said constitute a delivery of the cotton to the plaintiff.

In the 2433d Article of the Civil Code it is said when goods, produce, or other objects, are not sold in a lump, but by weight, by tale or measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller (en ce sens, que les choses vendues sont aux risques du vendeurs) until they be weighed, counted or measured ; but the buyer may require either the delivery of them or damages, if any be for the same, in case of non-execution of the contract.

Conceding for the purposes of the argument, and without expressing an opinion on this point, that the risk of a thing sold by weight, but delivered into the actual or clear constructive possession of the buyer before the weight is ascertained, passes to the buyer by the mere fact of delivery and in the absence of any convention, we deem it sufficient for the purposes of the present case to say that there was not a clear and complete delivery of this cotton, as between vendor and vendee, before the fire. We consider the orders on the pressman in favor of the buyer's brokers an initiatory step towards such delivery, which, as between this purchaser and seller, was to be completed by subsequent acts, to-wit: the turning out the cotton by the pressman to enable the purchaser's broker to class and mark it, and the weighing by the seller's weigher.

As to the argument deduced by the defendant from that class of cases where contests have arisen between the seller who has not received his price and a subsequent creditor who has trusted the buyer on the faith of an apparent possession, it must be observed, they involve other principles, and do not necessarily embrace the question of risk between buyer and seller.

We think there is no error in the judgment below, which was in favor of the plaintiffs, and it is therefore affirmed with costs.