(79 South. 214)

No. 21522.

MILLIKEN & FARWELL v. AMERICAN SUGAR REFINING CO.

(June 29, 1918.)

*(Syllabus by Editorial Staff.)*

SALES ☞178(4) — ACCEPTANCE — WEIGHING AND SAMPLING.

Under a contract for the sale of sugar "to be sampled, weighed and tested according to the usual custom upon arrival," the act of the buyer's superintendent in suggesting that the barge be moved to the ship's side as a matter of convenience, without assuming responsibility for its safety, was not an acceptance of delivery dispensing with weighing and sampling.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Suit by Milliken & Farwell against the American Sugar Refining Company. Judgment for defendant rejecting plaintiffs' demand, and plaintiffs appeal. Affirmed.

Dart, Kernan & Dart and Grant & Grant, all of New Orleans, for appellants. Carroll, Henderson & Carroll and Denegre, Leovy & Chaffe, all of New Orleans, for appellee.

O'NIELL, J. The plaintiff contracted to sell and deliver to the defendant 36,000 bags of centrifugal first sugar, 96 test, at $3 5/16$ cents per pound. Delivery was to be made at the defendant's Chalmette Refinery or at the Southern Pacific Company's Algiers or Gretna docks, "all sugar to be sampled, weighed and tested, according to the usual custom, upon arrival."

Delivery "at the Chalmette Refinery" was understood and interpreted by both parties to mean that the sugar should be delivered on the wharf in front of the refinery, or on board a ship if one was there ready to receive the sugar when a boat load or barge load would arrive. Delivery of each barge load of sugar was effected by a sampling and weighing by representatives of both parties as the bags of sugar were transferred from the barge to the wharf, if there was no ship ready to receive it, or from the barge to the ship, if there was one ready to receive it.

The barge load of sugar in contest, containing 1,000 sacks, weighing 356,042 pounds, was delivered by plaintiff to a tugboat or transportation company, to be towed from Stanton Plantation to the wharf at Chalmette.

The tug and barge arrived at the Chalmette wharf at 4 o'clock in the afternoon.

As the bargemen were unable to unload the sugar that evening, the barge was tied to the wharf, and the tug had cast off and moved out into the river about 150 feet, when the captain was called back by the tugboat's river clerk and directed to place the barge beside a ship near by, under charter to the defendant. The river clerk had accompanied the barge from Stanton Plantation to the Chalmette wharf, and it was at the suggestion of the superintendent of the sugar refinery that he directed the captain of the tug to remove the barge from the wharf to the ship's side. The barge was tied beside the ship and left in charge of a watchman from the tugboat. Waves from the ships that passed in the night washed over and tilted the barge, causing 730 bags of sugar to slide into the river and be lost. The remaining sugar, some of which was damaged by water, was salved by the defendant, at the request and for account of the plaintiff.

This suit was brought for the price of the 356,042 pounds of sugar, $11,793.89, on the allegations merely that the sugar was sold and actually delivered to the defendant at the price stated. The defense was that the sugar was not delivered. Judgment was rendered in favor of the defendant, rejecting plaintiff's demand; and the latter appealed. Thereafter the defendant paid plaintiff the value of the salved sugar, $1,687.81, under an agreement that plaintiff's demand in this suit should be reduced that much and without prejudice to the rights of either party hereto.

We have ignored certain side issues which need not be considered in our view of the case. That view is that the case is governed by the provisions of article 2458 of the Civil Code, that, when goods are sold, not in bulk, but by weight, count, or measure, the sale is not complete, inasmuch as the goods so sold are at the risk of the seller, until they are weighed, counted, or measured. In this case, the sugar was to be weighed and sampled by the buyer, as well as the seller, at the place of delivery. The weighing and testing that was done by the plaintiff when the sugar was loaded upon the barge was not a compliance with the stipulation that the sugar was "to be sampled, weighed and tested, according to the usual custom, upon arrival."

The contention of the plaintiff is that the act of the superintendent of the refinery, directing that the barge be removed from the wharf to the ship's side, was an acknowledgment that delivery had been made at the wharf, or an acceptance of delivery there. We do not think so. The evidence satisfies us that the superintendent did not order or direct, but merely suggested, that the barge be placed beside the ship, as a matter of convenience. It does not appear that either he or the river clerk thought that he (the superintendent) assumed responsibility for the safety of the barge, or dispensed with the weighing and sampling that was necessary to complete the sale.

In the case of Fearn, Donegan & Co. v. Maltby, 9 La. Ann. 8, from which the learned counsel for plaintiff quote, the sugar that was held to be at the risk of the buyer had been weighed and accepted by him, receipted for, and hauled from the sugar house to the bayou bank for shipment by the buyer. The decision in Larue & Prevost v. Rugely, Blair & Co., 10 La. Ann. 242, also cited by appellant, was merely an affirmance of the statement in article 2458 of the Civil Code; and, in the third case cited, D. Kelham & Co. v. Carroll, Hoy & Co., 20 La. Ann. 111, the decision rested upon a stipulation that the cotton sold by weight "should remain on the plantation at the risk of the purchasers until called for by them." The decisions cited by counsel for appellant are therefore not at all opposed to the decision rendered in this case.

The judgment appealed from is affirmed, at appellant's cost.