(86 South. 605)

No. 22445.

## PENICK & FORD, Limited, v. WAGUES-PACK & HAYDEL et al.

(May 3, 1920. On Rehearing, Nov. 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Sales** ⬚214—**Agreement held sale passing title.**

Contract for sale and purchase of crop of molasses estimated at specified number of gallons providing definite method of ascertaining exact quantity *held* a sale vesting title in buyer, under Civ. Code, arts. 1909, 1915, 1916, 1918, 1919, 2439, 2449, 2450, 2458, 2459, 2462.

2. **Sales** ⬚81(5)—**Provision requiring buyer to give instructions and remove goods by certain date construed.**

Provision in contract for sale and purchase of crop of molasses requiring buyer to give seller shipping instructions and remove goods by certain date *held* not to provide for forfeiture upon buyer's failure to give shipping instructions and remove goods by such date, but merely to entitle seller after putting buyer in default to either an action for the price, for annulment, or for damages, under Civ. Code, arts. 1927, 1930.

3. **Sales** ⬚406—**Buyer's compliance with contract subsequent to seller's breach held not condition to action for damages.**

Where sales contract passing title to buyer required buyer to give seller shipping instruc-

tions and to remove goods by certain date, buyer's failure to give seller shipping instructions, after having been told that he had received all of the goods, did not preclude him after discovery of such breach from recovering damage for seller's breach in selling goods to third party, since seller's breach made buyer's further compliance with contract by furnishing cars and giving shipping instructions a useless thing.

O'Niell and Provosty, JJ., dissenting.

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; Charles T. Wortham, Judge.

Action by Penick & Ford, Limited, against Waguespack & Haydel and others. From judgment sustaining exception of no cause of action and dismissing suit, plaintiff appeals. Reversed.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

W. J. & H. W. Waguespack, of New Orleans, for appellees.

DAWKINS, J. Plaintiff appeals from a judgment sustaining an exception of no cause of action and dismissing its suit. The action is upon a contract for the purchase of defendant's crop of "blackstrap" molasses of 1914–15, and reads as follows:

"Contract of Purchase and Sale.

"New Orleans, La., June 28, 1915.

"Penick & Ford, Limited, of New Orleans, Buyer, and Waguespack & Haydel, Represented by G. Cabiro, Broker, Seller.

"Article: Laura Blackstrap Molasses.

"Quantity: Crop 1914–15, estimated at one hundred and twenty thousand (120,000) gallons.

"Price: Five and three-quarter cents (5¾¢) per gallon f. o. b. cars plantation.

"Terms: Five days from date of gauge certificate, if gauged in New Orleans; if shipped elsewhere, five days after date of bill of lading.

"Shipments: As required by buyer, but not less than three tanks shall be filled at a time unless seller's factory has steam up for other purposes. Buyer to remove all molasses by October 1, 1915.

"The molasses herein sold is to be not less than 42° Beaumé at 90° Fahrenheit, and is to be shipped from time to time as requested in tank cars furnished by the buyer.

"The seller agrees to fill said tank cars promptly upon arrival and to fill and ship same as instructed by buyer. Twenty-four hours to be allowed for the filling of a tank car and for any delay after such time, seller agrees to pay buyer at the rate of $1.00 per tank for each twenty-four hours. Seller agrees not to hold buyer's tank cars for storage purposes.

"Where the said molasses is instructed shipped to New Orleans the delivery of same to be made at that point: buyer shall have the right to examine the molasses upon its arrival, to have it gauged by a licensed public gauger, at the expense of seller, and settlement so far as quantity is concerned to be made upon the returns of said public gauger. [Signed] Waguespack & Haydel, by G. Cabiro, Broker. Penick & Ford, Limited, W. S. Penick, Pres."

Plaintiff alleges that it received of defendant six tank cars of molasses of the crop of 1914–15, containing in the aggregate 47,566 gallons, and that it was ready and willing at all times to receive and pay for the remainder thereof; that the defendant, through its counsel, has admitted diverting and disposing of to other persons prior to October 1, 1915, 38,374 gallons of molasses of the said crop, and that on information and belief it alleges that the said defendant also sold and diverted another quantity of 11,616 gallons, to persons other than petitioner, all in violation of its contract, and to the injury and detriment of petitioner; that after an extended correspondence, beginning with the 7th day of October, 1915, at which time it had received information that defendant had not shipped petitioner all of its said crop, and in which the defendant had repeatedly assured plaintiff that it had received all of the crop of 1914–15, defendant, through its counsel, as aforesaid finally admitted this to be false and that a part of the crop had been diverted to other sources; that petitioner thereupon went into the open market, as it was compelled to do in fulfillment of its own contracts, and purchased 50,000 gallons of blackstrap molasses at 18 cents per gallon, the best price obtainable; and that

petitioner is entitled to recover of defendant the difference of 12¼ cents per gallon, or a total sum of $6,123.77½, as damages suffered by petitioner as the result of the violation of the said contract.

The exception of no cause of action seems to have been sustained by the lower court, who rendered a written opinion found in the record, upon the theory that inasmuch as the contract stipulates: "Buyer to remove all molasses by October 1, 1915," and shipments were to be made "as required by buyer" in tank cars to be furnished by it, and the plaintiff (buyer) not having alleged that it furnished any cars and demanded any deliveries which were not made before October 1st, it has failed to allege a default or breach of the contract on the part of the defendant, entitling petitioner to recover. This conclusion necessarily rests upon the idea that plaintiff, under the contract, had acquired the right of demanding only such portion of the crop as it furnished cars for and offered to receive prior to October 1st, and that thereafter it lost all right to exact performance.

The agreement is labeled "Contract of Purchase and Sale," Penick & Ford, Limited, is named as the "buyer," and Waguespack & Haydel is the "seller"; the thing sold is "Laura blackstrap molasses," and the quantity is "crop 1914–15 estimated at one hundred and twenty thousand (120,000) gallons"; the price, "five and three quarter cents (5¾¢) per gallon f. o. b. tank cars at plantation." The molasses was to test 42° Beaumé at 90° Fahrenheit, and to be paid for according to measurement of public gauger.

[1] This, it would seem to us, was a sale, which, under the law, vested the ownership of the molasses in the purchaser, and in which a definite method of determining the exact quantity was fixed by the parties. We quote the following pertinent articles of the Revised Civil Code:

"Art. 2439. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.

"Three circumstances concur to the perfection of the contract, to wit: The thing sold, the price and the consent."

"Art. 2449. Not only corporal objects, such as movables and immovables, live stock and produce, may be sold, but also incorporeal things, such as a debt, an inheritance, the rights, titles and interest to an inheritance or to any parts thereof, a servitude or any other rights.

"Art. 2450. A sale is sometimes made of a thing to come; as of what shall accrue from an estate, of animals yet unborn, or such like other things, although not yet existing."

"Art. 1909. If the obligation be to deliver an object which is particularly specified, it is perfect by the mere consent of the parties. It renders the creditor the owner, and although it be not delivered to him, puts the thing at his risk from the date of the obligation, if the contract is one of those that purport a transfer."

"Art. 1915. But if the object, contracted to be given, be not a thing particularly specified, but is uncertain, indeterminate, or described only by quantity or number, it is at the risk of the creditor only from the time he is in legal default for not receiving the thing after it has been tendered. A contract to deliver a certain number of bushels of wheat, to pay a certain sum of money, or to ship a certain number of hogsheads of sugar, without further identification, comes under this rule.

"Art. 1916. There is an exception to the rule established in the last preceding article; when the object of the contract, although indeterminate in itself, makes part of a whole that is determinate and certain, and the whole, of which it forms a part, is lost or destroyed by inevitable accident before delivery, the loss will fall on the creditor of the thing sold. A sale of ten bales, of the hundred bales of cotton in a particular store, is an example of this rule; and if all the cotton be destroyed by fire, the accident will discharge the seller from the obligation of delivering it."

"Art. 1918. Although the contract contain an obligation to deliver, yet if it be one that does not purport a transfer of property, the thing is always at the risk of the obligor, provided there be no specific agreement to the contrary.

"Art. 1919. If the contract be complete, and be one that purports a transfer of the ownership of the property, its destruction before delivery or default does not exonerate the party who has [was] to have received it, from the performance or delivery of that which on his part was intended as the price or equivalent for such property."

"Art. 2458. When goods, produce, or other objects, are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed, counted or measured; but the buyer may require either the delivery of them or damages, if there be any, in case of nonexecution of the contract."

"Art. 2459. If, on the contrary, the goods, produce or other objects, have been sold in a lump, the sale is perfect, though these objects may not have been weighed, counted or measured.

"Art. 2460. Things, of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold until the buyer be satisfied with the trial, which is a kind of suspensive condition of the sale."

"Art. 2462. A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables is in writing, so far amounts to a sale as to give either party the right to enforce specific performance of same. * * * *"

It is admitted in the briefs and arguments that, at the time of making the contract, the exact quantity of blackstrap molasses that would be made from the crop of 1914–15 on the Laura plantation was not known, for the reason that at that time, June 28, 1915, all of the sugar had not been extracted; but this fact, under the plain letter of the Code (articles 2439, 2449, 2450, and 1909) did not prevent the sale being perfect. There was a seller, a purchaser, a thing, a price, and the consent of the parties was plainly expressed.

The lower court says:

" * * * The whole tone of plaintiff's petition and argument is that defendants were and are under obligation to deliver all of this molasses, whether or not such delivery was required or requested by plaintiff, whether or not tank cars were sent to receive it, and whether or not October 1st, 1915, had passed.

"Under the plain reading of the contract we cannot adopt this view. Plainly defendants,

were only required to deliver such molasses as was required or requested by plaintiff, and to receive which tank cars were sent; and that defendants were under no obligation to deliver after October 1st any molasses for which demand had not been made before that time."

[2] The effect of this argument is to hold that, under the heading as to how shipments were to be made, the sentence reading, "Buyer to remove all molasses by October 1, 1915," was intended to mean that plaintiff bought and was entitled to exact delivery of only so much of the 1914–15 crop of blackstrap molasses made on the Laura plantation as it might require before October 1st, when the contract otherwise clearly indicates that the parties intended to sell and buy the whole of the crop. The clause thus quoted, it will be seen, was construed by the lower court as one of forfeiture and through which plaintiff was to lose all right to exact performance by the mere failure to do so before the date mentioned. However, a fair interpretation of that provision along with the other stipulations of the contract, it would seem to us, would be to hold that it was inserted for the benefit of the seller in order to exact an early removal of the molasses from its premises, and that failure to do so by October 1st would amount to a breach of the contract, entitling the seller after putting in default to either an action for the price, for annulment, or in damages. R. C. arts. 927, 1930. Forfeitures are not favored in the law, and, in order that a stipulation should have that effect, it should be clear that the parties so intended. The most that could be said of plaintiff's failure to send tank cars and to remove the molasses before October 1st, it would seem, was that it had committed a passive breach of the contract, which, after proper putting in default, would have entitled defendant to an action in damages; but, in the absence of such putting in mora, plaintiff could have performed after the lapse of the time stipulated, and defendant would not have had an action even in damages. C. C. art. 1931.

[3] On the other hand, it is alleged in the petition that prior to the 1st of October defendant had committed an active breach of contract by selling and delivering a large quantity of the crop of 1914–15 to other persons, thus making it impossible to carry out its own obligations under the contract. In such circumstances, it was not necessary that plaintiff put defendant in default by exacting delivery, in order to entitle it to sue for damages. C. C. art. 1932. The petition does not allege that plaintiff sent in cars for any molasses and which was refused prior to October 1st, but it does charge as follows:

"That petitioner was not satisfied with the delivery of 47,566 gallons of blackstrap molasses on a contract for a crop which was estimated at 120,000 gallons, and that it continually made inquiry as to whether it received the entire 1914–15 crop of Laura blackstrap molasses."

It does not disclose just when such inquiry was commenced, and otherwise plainly indicates that plaintiff did not learn definitely that the entire crop had not been delivered until some months after the 1st of October. However, it was not required to do a vain and useless thing, that is, to send the tank cars and demand delivery of molasses which defendant had already sold. Defendant had actively breached the contract before the 1st of October, and was itself in default; hence it was powerless to put plaintiff in default, for it could not offer to deliver that which had already been sold. Defendant was first in default, and, as pointed out above, plaintiff had the right to exact performance and, on the failure or inability of defendant to comply, was entitled to its action in damages.

If the correspondence between plaintiff on the one hand, and defendant and its counsel on the other, is correctly quoted in the petition, it discloses extreme bad faith on the

part of defendant, in that, notwithstanding it knew that it had diverted and disposed of a large part of its crop prior to October 1st to other persons, it repeatedly denied this fact, and attempted to have plaintiff believe the whole crop had been delivered to it.

For the reasons assigned, the judgment appealed from is therefore annulled and reversed, and it is now ordered and decreed that the exception of no cause of action be and the same is hereby overruled. Defendant to pay the costs of this appeal, all other costs to await final judgment.

PROVOSTY, J. I am not so sure that judicial notice may be taken of the time when the grinding season begins, and especially of the fact that the tanks must be emptied and cleaned preparatory to it; but as I am satisfied that these facts could be proved on the trial, and that the time limit was agreed to because of them, I concur in Justice O'NIELL's dissent.

See dissenting opinion of O'NIELL, J., 86 South. 608.

## On Rehearing.

SOMMERVILLE, J. Exception of no cause of action: Plaintiffs sue on a contract which is embodied in their petition, whereby defendants, Waguespack & Haydel, sold their entire crop of Laura blackstrap molasses, 1914–15, estimated at 120,000 gallons, at 5¾ cents, to plaintiffs. The contract was dated June 28, 1915. The contract contained the following provision: "Buyer to remove all molasses by October 1, 1915." Plaintiffs allege that they sent six tank cars to Laura plantation and received 47,566 gallons of the crop. They further allege that they were at all times ready and willing to take the whole of said crop from defendants, but were informed by defendants that the whole of said crop had been shipped to them (plaintiffs); that these statements were made verbally and in writing. The letters are copied in the petition, and are subsequent in date to October 1, 1915. They further allege that defendants had actively violated the contract by selling and shipping to other persons the other part of the crop of blackstrap molasses, which, under the contract referred to, should have been delivered to them (plaintiffs). They specify that defendants sold and shipped 38,374 gallons of said blackstrap molasses on September 4, 10, 11, 24, and October 1, 1915, during the existence of the contract, to certain named persons; and that they also shipped during that time 11,616 additional gallons to third persons; and they ask for judgment against defendants for the difference between the price of molasses agreed upon between the parties, and that which plaintiffs paid for molasses in open market to fill their contract.

Defendants filed an exception of no cause of action, which was sustained. The plaintiffs have appealed.

The statement of the petition shows an active violation by defendants of the contract sued upon, and there was, therefore, no reason for putting them in default, or of alleging the putting in default. The petition clearly states a cause of action.

The judgment appealed from is annulled, avoided, and reversed; and the case is now remanded to be proceeded with according to law.

O'NIELL, J., dissents for the reasons heretofore given by him.

DAWKINS, J., concurs in the decree.