THOMPSON, J.
 

 This suit is for an alleged balance due on purchase price of 481.7 tons of coal at $8 per ton; the balance claimed being $2,353.60.
 

 The defendant admits by answer and supplemental answer: That it bought from plaintiff 218.2 tons of coal at $S per ton, which was delivered by plaintiff on the bank of Bayou Choctow and there measured. That he paid $1,500 of-the price and tendered in the amended answer the balance due for that coal. That beyond, the amount tendered the defendant owes plaintiff nothing on the purchase of coal.
 

 The court below gave judgment for the amount tendered, but rejected the balance of plaintiff’s demand.
 

 The plaintiff had a contract with the Choc-tow Basin Gravity drainage district to construct a system of drainage canals for said district. On August 19, 1925' the defendant agreed to take over the said contract on the same terms and conditions as contained in plaintiff's contract with the drainage district.
 

 In this subcontract, the defendant agreed to buy, among other things, the coal which plaintiff had on hand at $8 per ton.
 

 According to the plaintiff’s testimony, he had bought from the West Kentucky Coal Company 565.05 tons of coal and engaged the Baton Rouge Coal & Towing Company to de-. liver it on' Bayou Choctow. The coal company delivered 260 tons on the Bayou Choc-tow, so plaintiff says, but kept the balance on the barge at Baton Rouge.
 

 After the contract was made with defendant, the coal on Choctow Bayou was measured and settled for as previously stated.
 

 The coal on the barge at Baton Rouge was never measured and was never paid for. It was lost by the sinking of the barge.
 

 The question presented is, Upon whom did the loss fall, or, in other words, at whose risk was the coal after the contract of August 19, 1925?
 

 The plaintiff contends that the sale was not only a lump sale, with the price and definite object agreed upon between the parties and appropriated to the contract, but that actual delivery to the vendee had been made before the loss occurred.
 

 The defendant' contends that the sale was
 
 *830
 
 by weight; that the coal in the barge at Baton Rouge was to be delivered and weighed or measured at Plaquemine.
 

 There is some conflict' in the evidence on the question as to whether the coal had been delivered at Baton Rouge to the defendant and as to whether his conduct amounted to an acceptance of the coal.
 

 We are of the opinion, however, that the coal was never actually delivered and was never accepted by the defendant.
 

 The agreement between the parties contemplated that the coal should be delivered at Plaquemine and there weighed or measured, and was not to be paid for until so delivered weighed or measured.
 

 There was never any agreement as to who should carry the risk.
 

 The written contract fixed the price at $8 per ton, and the plaintiff testified that the stuff had to be counted, the tools counted, and the coal measured, and everything cheeked up. He also testified that the coal at Baton Rouge was never measured or weighed after the defendant agreed to buy.
 

 The Civil Code, art. 2458, declares that, when goods, produce, or other objects are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller until they Ije weighed, counted, or measured.
 

 But where the goods, etc., have been sold in a lump, the sale is perfect, though thése objects may not have been weighed, counted, or measured. Civ. Code, art. 2459.
 

 The case here falls squarely under the first article quoted. The coal was not sold in a lump at a price for the whole, but the quantity sold was to be determined by weight or measure, and the price was to be $8 per ton for whatever was found to be on hand.
 

 There was no agreement as to the amount of the coal, and there could be no definite agreement as to the price the defendant would owe the plaintiff until the coal was measured. Lienee the sale was not perfect, because -two essential things were lacking — the agreement as to the amount of coal the defendant was to get, and the total price that would be due plaintiff.
 

 That the amount of coal on the barge was uncertain and indefinite is fully demonstrated by the evidence in the record. It is extremely doubtful if any one can, after reading the evidence, determine the amount of coal that was lost by the sinking of the barge.
 

 The articles of the Civil Code 1909 and 1919, cited by plaintiff, refer to contracts of sale where the thing and the price are definitely agreed on, and have no reference to sales where the total price to be paid depends on the quantity of the object sold to be ascertained by counting, by weighing, or by measuring.
 

 The case relied on by the plaintiff in his supplemental brief as the leading one in support of his position is that of Penick & Ford v. Waguespack & Haydel, 148 La. 39, 86 So. 605.
 

 In that case the plaintiff had agreed to buy and the defendant to sell all of the Laura Blackstrap molasses of the crop of 1914-15, estimated at 120,000 gallons. The price was
 
 5%
 
 cents per gallon f. o. b. cars plantation. The defendants breached the contract by selling a part of the crop to other parties, The plaintiff had to go out into the open market and purchase at a much higher price, and sued the defendant for the difference.
 

 The court held the contract to be a sale which vested the ownership of the molasses in the plaintiff. The reason given by the court for so holding was that a definite meth7 od of determining the exact quantity was fixed by the parties.
 

 It will be observed, however, that the ques
 
 *832
 
 tion as to whether the contract of sale was by lump or by tale and measure was not an issue. The case went off in the lower court on an exception of no cause of action, on the theory that defendant was required to deliver' only such molasses as the plaintiff requested and for which tank cars were furnished.
 

 The case bears little or no analogy to the instant ease.
 

 The molasses contract was clearly a sale, in the sense that the plaintiff had a right to compel specific performance, or to sue for damages for the breach of the contract.
 

 • And that would be true in this case if the plaintiff had sold his coal to another person and the defendant had been forced to buy coal at a higher price than $8 per ton. In a suit -for the difference in price, the court, following the molasses case, would probably have held the contract to be a sale.
 

 The difference between the two castes is obvious.
 

 The case of Davenport v. Adler & Co., 52 La. Ann. 269, 26 So. 836, has no application whatever. There McDowell delivered the cotton at the gin, sold it at 5 cents per pound to the defendant, and instructed the ginner to deliver to the latter’s agent, who he said would settle for the ginning. The court said that this was a parting with the control of the cotton by McDowell and a transfer of the legal title to Adler & Co. That was an executed and not an executory contract óf sale.
 

 We can find no pertinent application of the case of Abbott Lumber Co. v. Home Ins. Co., 140 La. 130, 72 So. 841.
 

 That suit was for insurance on a lot of lumber, and the insurance company defended on the ground that the plaintiff was not the-owner of the lumber. The defense was sustained on the original hearing because no price had been fixed in the sale of the lumber to the plaintiff. On' rehearing, however, the court held that all of the lumber had been delivered on the leased ground, had been estimated and stenciled “Property of the Frank I. Abbott Lumber Co.”
 

 It was said that, by the very terms of the contract, the final inspection and measurement was merely for the purpose of determining whether the quantity purchased had been delivered. The final inspection was intended to correct mistakes as to quantity, but that such final inspection and measurement should in no wise be considered as affecting in any way the title to the property as vested in the purchaser but merely as incidental to determine the quantity purchased had been delivered on the contract. The court therefore held that the proposition that the sale was incomplete, because the contract fixed no price, was not sustainable.
 

 In the case of Campbell et al. v. Alfred Peun, 7 La. Ann. 371, the question at issue was one of delivery of 734 bales'of cotton, and the court held that the actual delivery of the whole in block completes the sale, even as to third persons, though the article is not counted, weighed, or measured.
 

 But the court likewise held that the delivery of a part of a divisible thing is a delivery of that part alone and not of the whole.
 

 So in this case there was a delivery and acceptance only of the coal on Choctaw Bayou, which on the principle of the last-cited case did not constitute a delivery of the coal on the barge at Baton Rouge.
 

 We conclude that there is nothing in the cases cited by the plaintiff which conflict with article 2458 of the Civil Code, which in unambiguous language declares that the things sold by weight, tale, or measure, and not in lump, are at the risk of the seller until they be weighed, counted, or measured.
 

 Our interpretation of the codal provision
 
 *834
 
 is in line with what we conceive to be the settled jurisprudence of this state. We shall refer, however, only to two cases.
 

 In Peterkin v. Martin, 30 La. Ann. 894, the defendant sold the plaintiff all the mixed corn he had in the elevator, being six, seven, or eight thousand bushels, at 65 cents per bushel, to be taken away in a few days, and he contended that the sale was of a determined lot, and that it put the thing at the risk of the purchaser from that date; that the sale was complete and perfect.
 

 That is the' contention of the plaintiff here — that is, that the sale was complete on and after August 19, 1925, and the coal was at the risk of the defendant.
 

 But the court in the cited case, on the authority of article 2458, Civ. Code, said that it did not think the sale was a completed sale, and that the corn wa>s at the risk of the seller since 65 cents per bushel for a quantity of corn between six and eight thousand bushels was not a definite price agreed on between the parties.
 

 The court further observed that, had the elevator taken fire, and the corn been consumed before it was weighed, defendant could not have sued for any specific sum as the ascertained price of the corn. And it was further stated that there can be no sale in lump except for a lumping price.
 

 In the case of Milliken & Farwell v. American Sugar Refining Co., 143 La. 667, 79 So. 214, the plaintiff contracted to sell the defendant a certain number of bags of sugar at 3%6 cents per pound, to be delivered at the defendant’s Chalmette refinery or at the Algiers or Gretna dock. The sugar was to be sampled, weighed, and tested according to the usual custom upon arrival. A barge load of sugar containing 1,000 sacks was delivered at the Chalmette wharf at about 4 o’clock in the afternoon, but, as the bargemen were unable to unload the sugar, the barge was tied beside a ship and left in charge of a watchman.
 

 That night the waves from passing ships tilted the barge, an.d 730 bags of sugar rolled off into the river and were lost.
 

 Suit was brought to recover for the sugar on the theory that it was sold and delivered. The defense was that the sugar had not been delivered.
 

 The defense was sustained, and. the judgment, was affirmed by this court, citing, as a basis, article 2458, Civ. Code.
 

 We see no reason to depart from the plain terms of the Code and the decisions of this court in keeping therewith.
 

 The judgment appealed from is affirmed.