## MOBILE MACHINERY & SUPPLY CO., Inc., v. YORK OILFIELD SALVAGE CO., Inc.

### No. 1672.

Court of Appeal of Louisiana. First Circuit.

Jan. 12, 1937.

Robt. R. Stone, of Lake Charles, for appellant.

Griffin T. Hawkins, of Lake Charles, for appellee.

DORE, Judge.

The plaintiff sued to recover the purchase price of drill stems sold the defendant, amounting to $281.10. While the defendant made a denial of its liability in its answer for these articles, yet it later made an admission that this account was correct and there is no complaint urged by defendant against the judgment rendered against it for this amount.

In its answer, the defendant filed a reconventional demand against the plaintiff company for $278.90, based on the following allegations: "That on, or about, the 12th day of September, 1934, your plaintiff in reconvention purchased from the Mobile Machinery & Supply Co. Inc., 60,000 feet of one inch pipe for $1,000.00 and fully paid therefor, with the understanding that the Mobile Machinery & Supply Company, Inc., would ship the said one inch pipe bought to San Antonio, Texas. That upon the arrival of the pipe at San Antonio, Texas, your plaintiff in reconvention, through its servants, agents and employees, found that there was only 43,266 feet of one inch pipe instead of the

60,000 feet purchased, or a shortage of 16,734 feet, at the rate of .01666¢ a foot, amounting to $278.90."

Judgment was first rendered by the trial court in favor of plaintiff for the amount sued for and rejected the reconventional demand of the defendant. The defendant filed a motion for a new trial or rehearing which was granted, and on the rehearing the trial court changed its ruling on the reconventional demand and allowed defendant a credit on the judgment for the full amount of the reconventional demand. Plaintiff has appealed.

As the only question before us is the reconventional demand, the situation is the same as though defendant were plaintiff in a suit seeking to recover from its vendor for the shortage in the pipe sold with allegations in its petition similar to those quoted from its answer. Has the defendant proved sufficient facts to recover under these allegations? The answer to this question renders it necessary to determine just what quantity of pipe defendant purchased from plaintiff on September 12, 1934.

The evidence shows that the agreement for the sale of this one-inch pipe was made on the above date between Mr. Hatch Bridges representing the plaintiff company and Mr. John J. Seiley, accompanied by a Mr. Bryant, representing the defendant company. These three persons met at the plant of the Bladon Springs Lumber Company at Service, Ala., to which place Mr. Seiley and his companion had gone for the purpose of purchasing the pipe in the dry kilns of the said lumber company which evidently had gone out of business. Seiley and Bryant stepped off and counted the pipe in the dry kilns and found that there were 60,800 feet of the pipe. Mr Bridges says that he did not count the pipe and did not know the number of feet in the kilns, but accepted the statement of Mr. Seiley and Mr. Bryant as to the quantity; that the pipe was sold in bulk without any guarantee as to the quantity for $1,000; that the sale was for all the pipe in these dry kilns "as is where is" without reference · to quantity or measurement.

Both Seiley and Bryant say that Bridges concurred in their figures as to the amount of pipe in the kilns. After agreeing on the price of $1,000 for all the pipe, Mr. Seiley gave a check for $50 payable to plaintiff

company with a notation on the back of the check as follows: "$50.00 paid on three 3 dry kilns, about 60,000 feet of 1" pipe. Bal. Due $950.00." All agree that the sale was completed on this occasion, and the defendant was to dismantle, load, and ship the pipe at its own expense. And in accordance with article 2439, C.C., the sale was complete.

Two days after this sale was made, the plaintiff company made out a bill of sale to Mr. L. M. York, president of defendant company, in which was recited the sale of all one-inch pipe in the dry kilns formerly owned by the Bladon Springs Lumber Company, at Service, Ala. Defendant denies having received this bill of sale, and, as we believe that the sale was completed on the date the check was given, it is necessary to look to the agreement had on that date to determine the quantity of pipe sold and the terms of the sale. On September 29, 1934, Mr. York, the president of defendant company, went up to Service, Ala., with a contractor, Mr. W. O. Evans, for the purpose of having the pipe disconnected and shipped to his company. He arranged to pay for all expenses in this connection.

The contractor notified Mr. York before the pipe was shipped that there were about 46,000 feet of the pipe; that part of the lower pipe in one of the kilns had been removed. The pipe was shipped on October 29, 1934, to the Briskman Pipe & Supply Company, San Antonio, Tex., at which time plaintiff drew a draft on the defendant for the balance of the purchase price. It was found that the freight bill for the car of pipe showed that there were only 73,500 pounds of the pipe, or 43,266 feet. On November 16th following, defendant wrote plaintiff complaining of this shortage and stating that it was estimated that 60,000 feet of the pipe had been purchased.

It is manifest from the facts in the case that what the defendant intended to buy and what the plaintiff intended to sell was all the one-inch pipe in these kilns. The seller did not undertake to sell 60,000 feet of this pipe, but only so much as was then in the kilns. In fact, the seller did not know the quantity of pipe in the kilns any better than did the purchaser. Both thought there were about 60,000 feet. No provision was made for measuring or counting the quantity of pipe nor was the price based on any such measurement.

■ Where a person sells all of the articles or products located in a certain place or to be manufactured within a certain time estimated by the seller and purchaser at a certain quantity, there is no warranty implied that the quantity will be either the maximum or the minimum fixed in the estimate. The sale only includes all of the articles or products located or manufactured in such place, and all that is required on the part of the seller is good faith in making delivery of all of such articles or products. See Bautovich v. Great Southern Lbr. Co., 129 La. 857, 56 So. 1026, Ann.Cas.1913B, 848.

■ It is not alleged nor proved that the plaintiff acted in bad faith. No concealment was made as to the quantity of pipe in the kilns. No fraud is shown on the part of the seller nor is there any mistake or error alleged or proved on the part of the purchaser as to the quantity of pipe sold and purchased. The sale was complete on September 12, 1934, when the terms were agreed upon and part of the price paid.

Article 2458 of the Civil Code provides that "When goods, produce, or other objects, are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed, counted or measured." Illustrative of this article is the case of Kohler v. Huth Const. Co., Inc., 168 La. 827, 123 So. 588, where the plaintiff sold the defendant all of the coal he had on hand at $8 per ton. Part of the coal was lost while on a barge and before it had been measured, and the court held that, as the parties contemplated that the coal was to be weighed and paid for at $8 per ton, the sale was not complete at the time of the loss, and, as the coal was at the risk of the seller until the sale was complete, the loss fell on the seller.

. The present case is entirely different. The sale of the pipe was in lump and no weighing, counting, or measuring was contemplated in order to complete the sale or fix the price. The sale of the pipe is controlled by article 2459 of the Civil Code, wherein it is provided that "If, on the contrary, the goods, produce or other objects, have been sold in a lump, the sale is perfect, though these objects may not have been weighed, counted or measured."

It follows from this, and in accordance with article 2467 and article 1909 of the Civil Code, that the pipe was at the risk of the defendant from the date of the sale. Delivery was made on the date of the sale, as the defendant was present and accepted the pipe and agreed to have it dismantled and shipped, and in accordance with Civil Code, art. 1919, the contract being completed, the defendant owed the price which was paid.

The trial court found that the sale was completed on the day the check was given and that there was then 60,000 feet of the pipe in the kilns. He found, however, from the testimony of the contractor who disconnected and shipped the pipe for defendant, that part of the lower pipe in one of the kilns had been removed. He then based his judgment for defendant on its reconventional demand on the ground that the shortage in the pipe had occurred after the sale on September 12, 1934. In so doing, it was necessary for him to hold that the plaintiff as seller was responsible for the safekeeping of the pipe after the sale until it was disconnected and shipped to defendant. In this respect, our brother fell into error and overlooked the plain provisions of our Civil Code and the interpretations of codal articles relative thereto, as the object sold was at the risk of the defendant as purchaser from the date of the sale, and, if any of the pipe was removed after that time, the purchaser must bear the loss. No effort is made to allege and prove that plaintiff removed or had removed this missing pipe or that it is in any way responsible for part of the pipe missing.

For these reasons, the judgment herein appealed from is erroneous in so far as it maintains the reconventional demand of the defendant herein, and it is accordingly ordered, adjudged, and decreed that the judgment in so far as it is in favor of the plaintiff and against the defendant in the sum of $281.10, with 5 per cent. per annum interest thereon from November 1, 1934, until paid, and all costs, be and the same is hereby affirmed, but, in so far as it recognizes the claim of defendant in reconvention, then and in that event that it be reversed, annulled, and set aside, and it is now decreed that the demand of defendant in reconvention be rejected and denied, all at the costs of the said defendant.