STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**GULF RICE MILLING, INC.**

**VERSUS**

**RICHARD SONNIER**

************

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT,
PARISH OF JEFFERSON DAVIS, NO. C-206-04,
HONORABLE WENDELL R. MILLER, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN**
**JUDGE**

************

Court composed of Michael G. Sullivan, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

John F. Craton
Barousse & Craton
Post Office Box 1305
Crowley, Louisiana 70527-1305
(337) 785-1000
Counsel for Plaintiff/Appellant/Appellee:
    Gulf Rice Milling, Inc.

Rick J. Norman, Jr.
Norman Business Law Center
145 East Street
Lake Charles, Louisiana 70601
(337) 436-7787
Counsel for Defendant/Appellee/Appellant:
    Richard Sonnier

SULLIVAN, Judge.

Gulf Rice Milling, Inc. appeals a jury verdict in favor of Richard Sonnier, a rice farmer in Jefferson Davis Parish, Louisiana, in which the jury determined that Mr. Sonnier did not breach a contract with Gulf Rice Milling, Inc. and awarded Mr. Sonnier damages for its wrongful seizure of his property. For the following reasons, we affirm.

## *Facts*

In November 2003, Gulf Rice Milling, Inc. (Gulf Rice) contacted Mark Tall, a broker with Louisiana Farm Bureau Marketing, seeking to purchase rice. Mr. Tall contacted area farmers and notified them of Gulf Rice's interest in buying rice at $14.00 per barrel. Mr. Sonnier submitted a sample of his rice to Mr. Tall. After the rice was tested, Gulf Rice told Mr. Tall it would purchase Mr. Sonnier's rice. A written confirmation was prepared by Mr. Tall and submitted to Gulf Rice which specified that Gulf Rice would pay $14.00 per barrel and that Gulf Rice would pick up Mr. Sonnier's rice by March 15, 2004.

All rice purchased by Gulf Rice must go through a receiving pit. In February 2004, Gulf Rice experienced a problem with its receiving pit, which took eight days to resolve. As a result, it got behind in its shipping schedule. Mr. Tall testified that he was led to believe Gulf Rice was attempting to pick up the rice by March 15. He also testified that he asked Jay Putt, Gulf Rice's Director of Operations, about paying a storage fee to farmers whose rice was not picked up by March 15. As late as March 15, 2004, Mr. Putt told Mr. Tall that Gulf Rice would not pay storage fees for rice that it did not pick up by that day.

Mr. Sonnier called Mr. Tall in the afternoon of March 15 asking about Gulf Rice picking up his rice. He told Mr. Tall Gulf Rice had until 5:00 p.m. to pick up

the rice or "it's mine."  Mr. Tall relayed Mr. Sonnier's message to Mr. Putt. Mr. Sonnier testified that he was never told that Gulf Rice would have a problem picking up his rice.  Mr. Tall corroborated this testimony, testifying that he only told Mr. Sonnier that Gulf Rice had a problem at the mill, not that it would be late picking up his rice because he did not know himself that Gulf Rice would not pick up his rice as per the confirmation sheet.  Mr. Tall also testified that Gulf Rice did not agree to pay storage until after March 15 and that Mr. Putt told him it would only pay storage if asked.

On March 16, Mr. Sonnier contacted another mill about selling his rice.  That mill bought his rice on March 22 and began picking it up on March 24.  On March 24, Gulf Rice sent a shipping schedule to Mr. Tall which outlined the dates on which it was going to pick up the rice it was to have picked up March 15.

On April 7, 2004, Gulf Rice filed a Petition for Specific Performance and, in the alternative, for Damages and Writ of Sequestration, alleging that it owned the rice stored in bins at Mr. Sonnier's farm.  A writ of sequestration issued, sequestering Mr. Sonnier's rice.  Thereafter, Gulf Rice also obtained a writ of sequestration, sequestering $100,552.58 in the possession of the mill that bought Mr. Sonnier's rice, which represented the proceeds of Mr. Sonnier's rice the mill had already picked up.

Mr. Sonnier answered Gulf Rice's petition, admitting that he had agreed to sell his rice to Gulf Rice.  However, he also asserted that the sale was never completed because Gulf Rice did not pick up his rice by March 15 and had not weighed or tested the rice.  He reconvened against Gulf Rice, seeking damages for wrongful sequestration of his rice and money.  Mr. Sonnier also asserted a claim for attorney fees.

2

After a hearing held on May 25, 2004, the trial court issued an order dissolving the writs of sequestration and awarding Mr. Sonnier $1,500.00 in attorney fees for having to obtain a dissolution of the writs of sequestration. On June 17, 2004, Mr. Sonnier received a check from the Jefferson Davis Parish Clerk of Court in the amount of $100,591.81, which represented the sequestered funds plus accrued interest.

The remaining claims were tried before a jury on April 25 and 26, 2005. The jury denied Gulf Rice's breach of contract claim against Mr. Sonnier and awarded Mr. Sonnier $100,000.00 in damages for Gulf Rice's wrongful seizure of his rice and his money.

Gulf Rice appealed, asserting it bought Mr. Sonnier's rice in November 2003. Mr. Sonnier answered Gulf Rice's appeal, urging he is entitled to attorney fees for the work performed by his attorney preparing for and representing him at the trial and on this appeal.

### Sale or Promise to Sell

Gulf Rice contends it became the owner of Mr. Sonnier's rice in November 2003. The Civil Code provides that a "[s]ale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale." La.Civ.Code art. 2439. The Civil Code further provides that ownership of the thing purchased is "transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." La.Civ.Code art. 2456. Gulf Rice contends its agreement with Mr. Sonnier satisfies

3

the requirements of Article 2456; therefore, ownership of the rice transferred to it when their agreement was confirmed in November 2003.

Mr. Sonnier contends he did not sell his rice to Gulf Rice. He makes two arguments. First, he argues that rice is an agricultural commodity for which title can pass only if there is a written agreement. *See* La.R.S. 3:3402(1); 3414. Section 3414 requires that "contracts . . . in which title shall pass" must be in writing. When the law requires that a contract be in writing, the parties to the act must sign the contract. La.Civ.Code arts. 1832 and 1837. The only writing regarding Gulf Rice's purchase of Mr. Sonnier's rice is the confirmation sheet prepared by Mr. Tall. Neither Gulf Rice nor Mr. Sonnier signed the confirmation sheet, and Mr. Sonnier testified that he did not authorize Mr. Tall to sign the confirmation sheet as his representative. Therefore, the confirmation sheet was not a written contract between the parties, and pursuant to the Agricultural Commodity Dealer and Warehouse Law, La.R.S. 3:3401-3425, title to Mr. Sonnier's rice did not pass to Gulf Rice.

Mr. Sonnier also argues that the sale was never completed because a price for his rice was never fixed as required by Article 2456 and because his rice was never weighed as required by La.Civ.Code art. 2458, which provides:

> When things are sold by weight, tale, or measure, ownership is transferred between the parties when the seller, with the buyer's consent, weighs, counts or measures the things.

> When things, such as goods or produce, are sold in a lump, ownership is transferred between the parties upon their consent, even though the things are not yet weighed, counted, or measured.

Mr. Putt testified that the price a mill will pay for rice is not established until the rice is in the mill's possession and is milled. Milling determines the total rice yield. Mr. Putt explained that milling 100 pounds of rough rice results in 20% rice

4

hulls and ten percent rice bran; the remaining 70% is the total yield.  The rice is also sampled and tested to determine its actual grade.  Mr. Putt explained that the price to be paid goes up or down as a result of milling and testing.  The confirmation sheet establishes that staining also affects the price of the rice, as it provides that one lot of Mr. Sonnier's rice would be discounted $.30 because of stain.  After milling and sampling, the rice is then weighed to determine the settling price, the amount to be paid to the farmer.

In *Kohler v. Huth Const. Co.*, 168 La. 827, 123 So. 588 (1929), the supreme court was presented with a situation almost identical to this one.  The court determined that a sale of coal at $8.00 per ton was not complete when the barge on which the coal was deposited sank before the coal was weighed.  In reaching this determination, the supreme court explained:

> The written contract fixed the price at $8 per ton, and the plaintiff testified that the stuff had to be counted, the tools counted, and the coal measured, and everything checked up.  He also testified that the coal at Baton Rouge was never measured or weighed after the defendant agreed to buy.

> The Civil Code, art. 2458, declares that, when goods, produce, or other objects are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller until they be weighed, counted, or measured.

> But where the goods, etc., have been sold in a lump, the sale is perfect, though these objects may not have been weighed, counted, or measured.  Civ. Code[] art. 2459.

> The case here falls squarely under the first article quoted.  The coal was not sold in a lump at a price for the whole, but the quantity sold was to be determined by weight or measure, and the price was to be $8 per ton for whatever was found to be on hand.

> There was no agreement as to the amount of the coal, and there could be no definite agreement as to the price the defendant would owe the plaintiff until the coal was measured.  Hence the sale was not perfect, because two essential things were lacking--the agreement as to

5

the amount of coal the defendant was to get, and the total price that would be due plaintiff.

*Id.* at 829-30, 123 So. at 589. The same is true here: the rice had to be weighed, milled, and tested before the final price Gulf Rice would pay Mr. Sonnier was determined.

Gulf Rice argues an earlier supreme court decision, *Penick & Ford v. Waguespack & Haydel*, 148 La. 39, 86 So. 605 (1920), conflicts with *Kohler* and should be applied. The supreme court in *Kohler* refused to follow the court's decision in *Penick*, explaining:

> The court held the contract to be a sale which vested the ownership of the molasses in the plaintiff. The reason given by the court for so holding was that a definite method of determining the exact quantity was fixed by the parties.

> It will be observed, however, that the question as to whether the contract of sale was by lump or by tale and measure was not an issue. The case went off in the lower court on an exception of no cause of action, on the theory that defendant was required to deliver only such molasses as the plaintiff requested and for which tank cars were furnished.

*Kohler*, 168 La. at 830-31, 123 So. at 589. However, the supreme court continued, stating:

> The molasses contract was clearly a sale, in the sense that the plaintiff had a right to compel specific performance, or to sue for damages for the breach of the contract.

> And that would be true in this case if the plaintiff had sold his coal to another person and the defendant had been forced to buy coal at a higher price than $8 per ton. In a suit for the difference in price, the court, following the molasses case, would probably have held the contract to be a sale.

> The difference between the two cases is obvious.

6

*Id.* at 831, 123 So. at 589. We disagree with this reasoning, as the determination of whether or not a sale has occurred is determined by the facts surrounding the transaction, not the relief a party to the transaction seeks.

As noted by the supreme court in *Kohler*, the case was decided on an exception of no cause of action, not on the merits. Additionally, two justices dissented in *Penick*, 148 La. 39, 86 So. 605. Justice O'Neill observed that the decision in *Penick* was in direct conflict with Article 2458 and the decision in *Peterkin v. Martin*, 30 La.Ann. 894 (La.1878). In *Peterkin*, the issue was which party bore the risk of damage to the corn grown by the defendant. The defendant contended that he had sold "all the mixed corn he had in the elevator, being six, seven or eight thousand bushels" at sixty-five cents per bushel because it was a "determined lot" and that the corn was at the risk of the purchaser when it was damaged by heat in storage bins. *Id.* at 895. The court, citing Article 2458, disagreed, explaining:

> We apprehend that in a case like this (admitting, for the sake of the argument, it was a purchase of all the mixed corn of Martin in the elevator, though Peterkin seems to deny this), where the quantity was stated between six and eight thousand bushels, at sixty-five cents per bushel, the price was not agreed upon and ascertained in the sense of article 2456. . . . We think the rule of article 2458 governs this case. That by the very terms of that article a sale "by weight, tale, or measure," is not a sale "in lump." We agree with plaintiff's counsel that there can be no sale in lump, except for a lumping price. . . . Nothing short of an express agreement, in a case like this, will put the thing before it is weighed at the risk of the buyer.

*Id.* at 895-96. The court ultimately concluded that "the sale was not perfect until the weighing and delivery" of the corn. *Id.* at 896.

The evidence established the strong similarities between *Kohler*, *Peterkin*, and this case. Mr. Putt's testimony established that determination of a final price for the rice was not be determined until after milling, testing, and weighing. We find the

decisions in *Kohler* and *Peterkin* more accurate interpretations of Article 2458, than the decision in *Penick*. Applying Article 2458 and the rationale of *Kohler* and *Peterkin* to the facts of this case, we find no error with the jury's determination that Mr. Sonnier did not breach a contract with Gulf Rice.

### *Damages*

Gulf Rice had no ownership interest in Mr. Sonnier's rice; therefore, its seizure of his rice and money was wrongful. La.Code Civ.P. arts. 3506 and 3571. The jury awarded Mr. Sonnier $100,000.00 in damages for Gulf Rice's wrongful seizure of his rice and money. Gulf Rice urges that this award was abusively high and that it should be reduced.

Mr. Sonnier has farmed for himself for thirty-two years. He farms thirty acres which he owns and 600 acres owned by someone else. He pays the landowner 40% of his net crop for rent. He testified that he has never started a new crop without first paying off the preceding year's crop loan. On January 3, 2003, he signed a promissory note in the amount of $103,000.00, which accrued interest at the rate of 6% per annum, to finance his 2003 rice crop; it was secured by a commercial security agreement in which Mr. Sonnier granted a security interest in his farm and crops.

Mr. Sonnier testified that he had a good reputation in his community before this lawsuit and was concerned it might be blemished because of Gulf Rice's actions. In his past experience, the mill that purchased his rice would usually pick it up within a day or two. He testified that Gulf Rice was to pay $1.00 more per barrel money for a later delivery date. When Gulf Rice did not pick up his rice, he did not know there was a problem at the plant or that Gulf Rice would pay storage. He was very worried about the money that was seized because he could not pay off his 2003 loan and could

8

not put in his crops for 2004. He was also concerned about the seized rice perishing, rotting, or spoiling. He was embarrassed because people asked him about the seizure and because he had to go to his banker and explain what was going on. He testified that he was worried he would lose everything if the seized money was not released to him.

Mr. Sonnier's wife, Gayle, testified that Mr. Sonnier was affected by the seizure of the rice and his money. She explained that he is not an emotional person and does not share his feelings with others. She also testified that after the seizure Mr. Sonnier became quiet and withdrawn in "his own little world." She, too, was embarrassed by the seizure and testified that they felt like they had done something wrong when they had not.

General damages, including embarrassment, humiliation, mental anguish and worry, are allowed after an illegal seizure. *Dixie Sav. & Loan Ass'n v. Pitre*, 99-154 (La.App. 5 Cir. 7/27/99), 751 So.2d 911, *writ denied*, 99-2867 (La. 12/10/99), 751 So.2d 855.

The jury determined that Mr. Sonnier did not breach a contract with Gulf Rice and that Gulf Rice's seizure of Mr. Sonnier's rice and money caused him embarrassment, humiliation, mental anguish, and worry. The jury learned that Gulf Rice seized much more than it needed to make itself whole. The difference between the price it was to pay Mr. Sonnier for his rice and the price Mr. Sonnier was paid when he sold his rice to another mill would have resulted in Gulf Rice having to pay approximately $22,000.00 more to replace Mr. Sonnier's rice. The rice and money Gulf Rice seized totaled more than $136,000.00.

An appellate court's review of a general damage award is guided by *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). In *Youn*, the supreme court noted that the trier of fact has "vast" discretion in awarding damages and that an appellate court should rarely disturb a general damage award. Under *Youn* and its progeny, "[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Id*. at 1260.

Mr. Sonnier lives in an area where agriculture is a way of life for many. Rice farming was his livelihood for thirty-two years. In all likelihood, the jurors were familiar with farming as a way of life and empathized with his situation, realizing that he may have seen himself losing everything he has worked his adult life to achieve. While the award may be higher than what this court would have awarded, we cannot say that under the circumstances it is abusively high. We find no abuse in the jury's general damage award.

### Unfair Trade Practices Act

When the trial court ordered that the writs of the sequestration be dissolved, it awarded Mr. Sonnier $1,500.00 in attorney fees as provided in La.Code Civ.P. art. 3506. Mr. Sonnier sought additional attorney fees at trial. The trial court refused to allow him to present his claim to the jury, and he proffered a statement of the fees his attorney charged after the hearing to dissolve the writs of sequestration.

Mr. Sonnier cites the Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401-1430, in support of his claim. Anyone who has suffered "any ascertainable loss of money or movable property, corporeal or incorporeal, as a result

10

of . . . [an] act or practice declared unlawful by R.S. 51:1405" can bring an action for an unfair or deceptive trade practice. La.R.S. 51:1409. If the claimant is awarded "actual damages," "the court shall award to the person bringing such action reasonable attorney's fees and costs." *Id.* Mr. Sonnier was awarded general damages not "actual damages"; therefore, the trial court did not err in refusing to allow him to present evidence of a claim under this provision.

### *Disposition*

The judgment is affirmed. Costs are assessed to Gulf Rice Milling, Inc.

**AFFIRMED**.