Landèche vs. Sarpy.

No. 9413.

FÉLICIEN LANDÈCHE vs. DELORD SARPY.

37    835
122    114
122    1057

The contract involved is interpreted and held to be a valid reciprocal contract, by which the plaintiff was bound to furnish, and defendant receive and pay for, hogsheads and barrels, as required under the terms of the contract, at the prices fixed ; and also that defendant was bound to pay for the articles as delivered. Campbell vs. Lambert, 36 Ann. 35, commented upon.

Plaintiff having delivered certain barrels and hogsheads, which had not been paid for though the bill had been presented at defendant's office, and having informed defendant's agent that he would furnish no more because his bill had not been paid, and no offer to pay having been afterwards made, was not in default during the term of his contract.

The breach of contract complained of being one of nonfeasance, and there being no legal excuse for omission to put in default, defendant's reconventional demand for damages is rejected.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston, J.*

*James Legendre* and *St. M. Bérault* for Plaintiff and Appellant.
*Henry Denis* for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J. Plaintiff sued the defendant for $539.30 value of certain hogsheads and barrels furnished the latter for the use of his Glendale and St. George plantations.

Defendant answered by a general denial as to plaintiff's demand, and then, assuming the character of plaintiff in reconvention, alleged substantially that plaintiff had contracted to furnish him all the hogsheads and barrels necessary for the sugar and molasses which he would make during the crop-year of 1882 on his Glendale and St. George plantations, on the same terms and prices on which he had furnished them for the preceeding year, viz : at $2.60 per hogshead and $1.25 per barrel, and to deliver the same as required ; that plaintiff partially complied with his contract by furnishing some hogsheads and barrels during the months of November and December, but subsequently refused to furnish any more, notwithstanding repeated demands; that defendant was, therefore, compelled to purchase at higher prices, occasioning him a direct loss of $1,724.35 in difference of price, besides other damage, aggregating in all $2,419.07, resulting from plaintiff's inexecution of his contract ; and he prayed for judgment dismissing plaintiff's demand and awarding defendant the sum claimed as above.

There was judgment below in favor of plaintiff for the amount of the principal demand, and in favor of defendant for $1,724.35 on his reconventional demand.

I.

Plaintiff and appellee suggests absence of jurisdiction in this Court on the ground that the amount in dispute is only $1,879.77, being the *difference* between the principal and reconventional demands. The question is to be determined on the face of the pleadings, and from the review of these which we have given above, it fully appears that there is no admission of any amount due to plaintiff, but, on the contrary, a denial and prayer for its rejection. Hence, the authorities quoted (35 Ann. 346; 33 Ann. 1089; 26 Ann. 291,) even if otherwise applicable, do not reach this case. The suggestion has no merit.

II.

Plaintiff contended that the contract alleged and proved was a simple promise to furnish the hogsheads and barrels at the price stated on the demand of defendant, without any reciprocal obligation on the part of the latter to take and pay for them, and was, therefore, void for want of a cause or consideration, under the doctrine of Campbell vs. Lambert, 36 Ann. 35.

After a close study of the evidence we conclude that the contract, sufficiently alleged and proved, was reciprocal, equally binding the plaintiff to furnish, and the defendant to take and pay for, the articles; at the prices fixed. That this was plaintiff's understanding of the contract is sufficiently apparent from his letter, in which he thanks Mr. Sarpy for having agreed to "continue to take hogsheads and barrels from him." It follows that Campbell vs. Lambert has no application; but, so far as this question is concerned, it falls under the authority of Beck vs. Fleitas, 37 Ann; in which a similar contract was upheld.

The decision in Campbell vs. Lambert was so freely criticized in the argument here as violative of the principles of the civil law, that we feel compelled to notice it. The authority of Pothier was firmly relied on as establishing the contention. This exhibits a misapprehension of the question involved. It is conceded that a promise to sell without a reciprocal promise to buy might be valid under the civil law; but the question is whether Art. 2462 of our Code and 1589 of the French Code has not changed the prior law in this respect, upon which question, of course, Pothier is of no authority. The French commentators and courts are divided on the question, several holding that such an unilateral promise is no longer binding. Journal de Palais, 29th Aug. 1829 : Journal de Palais, 28th June, 1832; Merlin Rep. vo. Vente, § 7, No. 5; Favard vo. Vente, sec. 1, § 4; Rolland & Villargues vo. Prom. de Vente. On the other hand, Troplong, Marcadé and others of high

authority maintain that the Code has not altered the ancient law on this point.

In such a conflict we would feel at entire liberty to follow either solution according to our own judgment. But we have not yet had occasion to make the choice. We have not held in Campbell vs. Lambert that *no* unilateral promise to buy or sell is valid ; but simply that *such* a one as was there exhibited is not. While the ancient civil law and many commentators on the French Code have maintained the validity of an unilateral promise to sell at a fixed price, within a given delay, a house, a farm, a horse or other particular thing, we venture to say that no system of law or respectable author has ever extended the principle to such a promise as that exhibited in Campbell vs. Lambert, which concerned merely a given quantity of a merchantable article fluctuating daily in price, and the effect of which was to enable the promisee to enforce the sale if the market went in his favor and to abstain if it went against him. In point of fact, in Campbell's case, the promisee claimed a profit of $29,000, on an executory contract under which he ran no possible risk of loss. In comparison with a system of law sustaining such a contract, the ethics of the gambler's. code would have been respectable ; for that prohibits betting on a certainty.

### IV.

A pivotal question under the facts of this case, is what were the terms of the contract as to the payment for the articles furnished.

It is admitted that the contract was similar to that for preceding year. Landèche says positively that " the terms of the agreement were that he would pay me for the goods on and at each delivery thereof. " Sarpy testifies that there was no agreement as to the time of payment. He admits, however, that the mode of execution had been to pay on delivery, saying, " when he used to send barrels he would bring the bill in and I would pay him. "

In the absence of express agreement for delay of payment, we know of no principle under which defendant could claim the right to terms of credit for goods delivered ; and, in view of the conflict of evidence and of the interpretation placed on the contract by the mode of execution pursued between the parties, we are compelled to conclude that plaintiff had the right to demand, and defendant was bound to make, payment for the goods as delivered.

### V.

Between November 17th and December 7th, 1882, Landèche had delivered goods to the value of $539.30, the price of which was due.

Mr. Sarpy was his own merchant, selling his own crops, and kept an office in New Orleans where he transacted his business. He says himself he kept it "as the place where he was to be found to pay his bills." We assume, and it is nowhere denied, that it was the proper place for Landèche to present his bill for payment. He sent it to his merchant in New Orleans for presentation and collection. It was returned to him with the information that it had been presented at Mr. Sarpy's office, and that "Mr. Sarpy being always ill, his son had answered that he could not pay your account."

The clerk who presented the bill testifies as follows: "The son said to me that his father was sick, and that during his absence from the office he, the son, could not pay the bill. I asked him when the bill could be paid, and he told me that he did not know."

Mr. Sarpy himself admits that the fact of this demand was communicated to him.

Shortly after this, Agaisse, an assistant overseer of Sarpy, on Glendale plantation, and an agent in reference to this business, called upon Landèche to get headings for hogsheads furnished under the contract, when he was informed by Landèche that "if I was coming for hogsheads and barrels I could go back, for he would not furnish Mr. Sarpy any more hogsheads and barrels, because he had had his bill presented to Mr. Sarpy and he had refused to pay it."

This is proved by the testimony of Agaisse himself and four other witnesses; and Agaisse further states: "I then told him it was all right, and I would inform Mr. Sarpy of the fact."

It seems that Agaisse never did convey this information to Sarpy, since the latter declares that he never knew that Landèche assigned such a reason for his refusal; but that is the fault of the agent, not imputable to Landèche; and under the doctrine that knowledge of the agent is knowledge of the principal, Sarpy is, in the eye of the law, affected with such knowledge.

He never, thereafter or at any time, paid or offered to pay the past due bill, which, under the view we take of the contract, was a condition precedent to his right to require Landèche to proceed under it.

The vague testimony that in reply to subsequent demands, Landèche assigned different reasons, sending messages sometimes, "that he did not have the barrels and hogsheads, and sometimes that he would see me," does not affect the case.

The first reason already assigned was sufficient and placed Landèche in his right.

We conclude that during the entire term of his contract, Landèche was never in default, and that defendant's reconventional demand was wrongfully sustained by the lower court.

This is a case of nonfeasance, not of defective execution, and, therefore, Berje's case, as appears from the last opinion therein, is inapplicable.  37 Ann. 471.

In cases of nonfeasance, or failure to perform an executory contract, putting in default or some valid excuse for omitting it, is essential to the recovery of damages.   C. C. 1912-3-4.

We have admitted various excuses for the omission, such as the one recently accepted in Beck vs. Fleitas, where the party had denied the existence of the contract, and we held that putting in default would have been useless.

But here, in order to put Landèche legally in default, it was necessary, under C. C. 1913, that Sarpy should "offer or perform, as the contract requires, that which, on his part, was to be performed," viz: to pay for the articles already delivered.  *Non constat* that, if he had made such offer and demand, Landèche would not have complied with his contract.

We have considered the suggestion that, in view of Mr. Sarpy's admitted means, the excuse of Landèche was a mere pretext to escape from a bad bargain.  Very likely he availed himself of the excuse because it was his interest to do so; but, if the law secures to him the right of requiring default before being held for damages, we cannot deprive him of it, because his motive in exercising the right may have been questionable.

It is therefore ordered, adjudged and decreed that the judgment on the reconventional demand herein appealed from be and is hereby annulled, avoided and reversed, and it is now decreed that said demand be dismissed at reconvenor's costs in both courts.

Rehearing refused.