(35 South. 919.)

No. 14,957.

LOUIS WERNER SAWMILL CO. v. O'SHEE.

(Feb. 1, 1904.)

VENDOR AND PURCHASER—CONTRACT OF SALE—VALIDITY.

1. Where a determinate tract of land is agreed to be sold at a price to be regulated by the quantity of timber on the land at a fixed price per thousand feet, the quantity of the timber to be estimated by experts, what is left indeterminate by the contract is the amount of money to be paid for the land; in other words, the price.

2. If the price is left to be determined by experts to be named thereafter by the parties, the contract is null, since either of the parties can nullify it by refusing to appoint the expert.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by the Louis Werner Sawmill Company against James A. O'Shee. Judgment for defendant, and plaintiff appeals. Affirmed.

White & Thornton and T. W. Holloman, for appellant. John Calhoun Blackman and John Holmes Overton, for appellee.

PROVOSTY, J. Plaintiff and defendant entered into the following contract:

"Alexandria, La., 1–28–'03.

"We, Jas. A. O'Shee and Louis Werner Sawmill Co., on this 28th day of January, 1903, mutually agree as follows: O'Shee agrees to sell and L. W. S. M. Co. agrees to buy all the lands of said O'Shee, lying in townships four and five north, and range one and two east, in Rapides Parish, La., in all about 4000 acres. The consideration to be one dollar and fifty cents per M. for each thousand feet of merchantable pine timber found on said lands. The quantity of timber, and therefore the value of the lands and amount of money which L. W. S. M. Co. is to pay O'Shee for said lands, is to be arrived at by two estimators, one to be chosen by each of the parties to this agreement. This estimate is to be made at a time to suit the convenience of the parties hereto, but to be commenced not later than March 1st next. It is understood that the term 'merchantable' used herein is intended to mean sound timber not less than 14″ in diameter at the stump."

In execution of this contract, the parties appointed each an estimator, and the estimators proceeded to their work. Plaintiff's estimator proposed that the estimate be made by the acre; defendant's proposed that it be made by 40's; and the latter mode was adopted. After four 40's had been estimated, the experts compared notes, and found themselves wide apart; and defendant's estimator declared that to proceed further was of no use, as they evidently should not agree. They, however, made the attempt at another 40, but, the estimates being widely divergent, defendant's estimator refused to go on any further, and the attempt at estimating was abandoned.

Defendant then notified plaintiff that he considered himself no longer bound by the contract, and that he would not execute the same, and plaintiff has brought this suit to compel him to do so.

Plaintiff alleges the contract and the above-recited facts, and that "the estimate of said West [defendant's estimator] exceed-

ed the estimate of said Marks [plaintiff's estimator] by an amount so great as to indicate there was no intention on the part of said West and defendant to make a true and correct estimate"; that plaintiff expected to make a profit of $10,000 from the contract; and plaintiff prays that the defendant be ordered "to appoint an estimator to complete the estimate on his part," and that in default of his doing so the court appoint one, and that "the said contract be ordered completed, and defendant be ordered to make title to plaintiff." Plaintiff also prays for an injunction restraining the defendant from cutting the timber on, or selling, the lands in question pending this suit.

Defendant interposed an exception of no cause of action, and, this exception having been sustained, plaintiff appeals.

The contention of defendant is that the contract is sought to be enforced as a promise of sale, and that as such it is fatally defective in not fixing a price.

Plaintiff, on the other hand, contends that the price is fixed, namely, $1.50 per thousand feet of timber on the land, and that the only thing not fixed is the quantity of the timber, and that this quantity is a matter ascertainable very much as in any sale by weight, tale, or measure; and plaintiff invokes the maxim, "Id certum est quod certum reddi potest."

Of these two contentions we readily adopt defendant's. Plaintiff cannot but admit that there is something left undetermined in this contract; something as to which the parties themselves were at the moment of the contract unable to come to any conclusion, and the fixing of which they found themselves compelled to leave to the future arbitrament of experts. Now, what was that thing?

To the completion of a contract of sale four things are essential: (1) Parties legally capable of contracting; (2) their consent legally given; (3) a thing; and (4) a price. Articles 1779, 2439, Civ. Code. Now, there is no question in this case as to the parties, their capacity, or their consent, nor as to the thing sold, viz, "all the lands of O'Shee," etc. Plaintiff does not pretend to say there is any indeterminateness as to the parties, the consent, or the thing sold. Where, then, is the indeterminateness, if not in the price?

The contract in so many words says "the value of the lands and amount of money which L. W. S. M. Co. is to pay to O'Shee for said lands, is to be arrived at by two estimators." Therefore it was the price of the sale which was indeterminate, and the fixing of which was left to the arbitrament of experts.

The comparison which plaintiff's counsel makes between this case and that of the sale of a number of bales of cotton at so much per pound is wholly fallacious. It would be apposite if two conditions were present in this case, both of which are absent: First, if, for measuring timber, science had devised a means operating mechanically, and with the same degree of accuracy as the scale (the chosen emblem of Justice itself) with which cotton is weighed; and, second, if, science having devised such a reliable means of measuring standing timber, the contract, instead of stipulating that the timber should be estimated, had stipulated that it should be measured. For, note, the express stipulation is that the timber shall be estimated, not that it shall be measured.

The sale of the cotton would be more nearly analogous if the parties agreed upon the weight and left the price to be regulated by the class of the cotton, agreeing to appoint experts to do the classing. The price would then have to be determined by a human agency, as in the case of the estimating of the timber; and, since this human agent would have to be chosen, an element of consent would enter into the problem—an element wholly absent where cotton is merely to be weighed.

The case being one, then, where the parties have agreed that the amount of the price should be determined and fixed by the agency of estimators or experts to be thereafter named by themselves, the question is whether such a contract is valid as a sale, for it is as a sale that plaintiff is seeking to enforce it.

With the exception of Duvergier (volume 1, No. 155) and one or two of the less authoritative writers, the French commentators on the Code Napoleon (article 1592, the exact counterpart of our article 2465) seem to agree that, if the price is left to be determined and fixed by experts to be named by the parties, the contract is null, since either of the parties has it in his power to nullify it by re-

fusing to appoint the expert. See particularly Delvincourt, vol. 3, p. 65, note 7; Duranton, vol. 16, No. 114; Troplong, Comm. on art. 1592, No. 157; Marcadé, same article, No. 2; Aubry et Rau, vol. 3, p. 232, note 19; Laurent, vol. 24, No. 76; Baudry-Lacantinerie, vol. 3, No. 464.

And to the same effect are the decisions of the courts. See, particularly, the case of Grosjean c. Tissier, Journal du Palais, 1894, part. 2, p. 144, and the footnote, where it is said: "It is now generally admitted that a sale made in consideration of a price to be determined by experts to be thereafter appointed has no binding character." Citing Cassation, 31 Mars, 1862; Grenoble, 1 Juin, 1865; Rennes, 26 Jan. 1876; Bordeaux, 6 Fev. 1878; Dijon, 15 Dec. 1881. See, also, Limoges, 4 Apr. 1826; Toulouse, 5 Mars, 1827.

If, however, the parties do name the experts, and the latter do fix the price, this perfects the sale. Cass. 31 Mars, 1862; Aubry & Rau, vol. 4, p. 337, § 349, note 28; Laurent, vol. 24, No. 76.

But if the parties do not name the experts, the court is without authority to do so. Same decision of Grosjean c. Tissier, supra cit.; Dijon, 15 Fev. 1881; Aubry & Rau, vol. 4, p. 337; and the other commentators cited above.

"What is essential," says Marcadé, Comm. on art. 1592, C. N., "is that the parties should have bound themselves in such way that the price may be thereafter determined as a mere consequence of the consent given by them, without any new act of volition on their part. If, for example, after the parties had said that the sale was made for a price as to which they would agree thereafter, they added, or which, in case of disagreement, should be fixed by an expert to be appointed by the parties themselves or by the judge of the district, it is clear that there would be a sale, since it would no longer be within the power of the parties to prevent the fixing of the price. The result would be the same if, without expressing themselves thus explicitly, the parties had, however, manifested the idea of leaving matters to the courts, if need were, to name one or more experts; but, when nothing indicates such a consent, the fixing of the price will have to be by the expert or experts that the parties will have designated, and if one of them refuses, or dies, or is un-

able to make the estimation, there will be no sale, the condition upon which it depended not having materialized."

"It will be said, perhaps," says Troplong, Comm. on same article, "that the default [of the party to the contract] to name the expert may be righted by the courts. But if nothing in the contract indicates that, in the event of refusal by one of the parties, the courts shall name the experts, it is not permissible to substitute the act of the court to that which should be the voluntary act of the contractants themselves, or of those to whom they have intrusted the fixing of the price. The contract, then, must not be added to, and the parties be compelled to submit to a fixing of price to which they have not dreamed of subjecting themselves."

The exception of no cause of action was properly sustained.

We have no fault to find with the amount of $600 allowed by the judge a quo as counsel fees for the dissolution of the injunction.

Plaintiff asks that the right be reserved to sue in damages. The right, such as it is, is reserved. Interesting decisions in that connection are those of Bordeaux, 6 Fev. 1878; and Dijon, 15 Dec. 1881; and, by same court, Grosjean c. Tissier, supra cit.

Judgment affirmed.