PROYOSTY, J.
These two consolidated suits are upon policies of fire insurance (quoting from policies):
“On stock of lumber, laths, shingles, posts and other timber products, their own or held by them in trust or on commission, or sold but not delivered, and for which assured may be legally liable; all while contained only in yard of the Red Cross Lumber Company situated at Red Cross on the Texas & Pacific Railroad, in the parish of Pointe Coupee, Louisiana.”
" The defense is that the plaintiff company did not “own” this property, nor “hold it in trust, or on commission,” nor “had sold but not delivered” it; and that, therefore, the policies cover an interest which the insured did not have, and are as a consequence null.
In the oral argument, the alternatives, “or held by them in trust or on commission, or sold but not delivered,” were stressed; but in the briefs they are not sought to be relied on. The case is pitched upon the sole ground of ownership, and we shall confine ourselves, in like manner, to that ground.
The said Red Cross Lumber Company and the plaintiff company entered into a contract which begins with the statement that the former shall “hereinafter be called the seller,” and the latter, “the purchaser,” and proceeds to declare as follows:
“The seller hereby agrees to sell and does sell to the said purchaser 1,000,000 feet of lumber,” and then “the purchaser hereby agrees to pay the following prices for the different grades and thicknesses herein set forth, f. o. b. cars, Melville, La.
1st & 2nd. Selects. 1 Shop. 1 Common.
1" $32.00 $28.00 $16.00 $11.00
1%" 33.00 . 29.00 21.00 11.00
2" 35.00 31.00 22.00 13.00
2%" 38.00 33.50 26.00 13.00
44.00 38.00 26.00 13.00
“On the first to the fifth day of each month beginning December 1, 1912, a joint estimate shall be made of the lumber on the yard of the seller and of the grades hereby purchased, and the purchaser agrees to advance to the seller $12.50 per 1,000 feet on all such stock. On the first to the fifth day of each month thereafter during the period this contract shall remain in force, the purchaser agrees to advance to the seller $12.50 per 1,000 feet on all stock cut during the preceding month on this contract which has been jointly taken up or estimated. Balance due on all lumber hereby sold is to be paid as' the lumber is shipped out, and invoice rendered purchaser.
“All lumber upon which advances are made shall be marked up to and become the property of the purchaser, and shall be held insured by the seller for the purchaser to the extent of all said advances, and the insurance so carried by the seller for the purchaser shall in no wise divest the title to the property from the purchaser.”
Then after provisions for prescribing the quantity of lumber which will have to be manufactured and stacked on the yard each month, and the time when it will have to be moved from the yard, and what description of lumber shall fall into each of the several classes, the contract proceeds:
“The lumber is to be graded by mutual inspection between the seller and the purchaser or their representatives. The Southern Cypress Manufacturer’s Association rules of November 24, 1911, to govern except where otherwise provided in this contract relative to tank, finish, and No. 1 Common.
“If it is found impossible for the representatives of the seller and the purchaser to agree on the inspection, a licensed inspector of the South *133 ern Cypress Manufacturer's Association shall be called. His inspection shall be final except where the rules permit a reinspection of the lumber when found necessary at destination.
“The final inspection and measurement shall in no wise be construed as affecting in any way the title 'of the property as vested in the purchaser, but merely as incidental to determine the quantity purchased has been delivered on contract.
“Eor $1 and other valuable considerations the seller hereby leases to the purchaser all ground on which the purchaser’s lumber is piled by the seller for'the full period of time covering the completion of this contract.”
It will be noted that the parties agreed that the lumber was to be graded by experts into four classes according to quality, and each of these four classes into five subclasses according to size, making a total of 20 classes, and agreed upon a price for each of these subclasses; but that they could not, and did not, know what quantity would fall into each or any one of these classes, and therefore could not, and did not, agree upon a price for the 1,000,000 feet as a whole.
Beforq this classification, which it was thus agreed should fix the price of the sale, could be made, the lumber was destroyed by fire; and the classification, and the consequent ascertainment of the price of the sale, became impossible.
The effect of this was to leave the sale without a fixed price; and therefore to destroy it, since, in the civil law, there cannot be a sale without a fixed price. O. C. arts. 2456, 2458, 2464; Tierman v. Martin, 2 Rob. 523; Kleinpeter v. Harrigan, 21 La. Ann. 196; Clark v. Comford, 45 La. Ann. 502, 12 South. 763; Werner Sawmill Co. v. O’Shee, 111 La. 817, 35 South. 919; Baudry-Lacantinerie, Sale (2d Ed.) vol. 17, p. 106.
The learned counsel for plaintiff cite common-law decisions in which under circumstances similar or analogous to those here presented, i. e., in the absence of a fixed price, the contract was held to be a sale. We have not deemed it necessary to read those decisions, as the common law and the civil law differ on this point of the necessity of the price of a sale being fixed and certain. Benjamin on Sales, c. 5, “Of the Price”; Blackburn on Sales (2d Ed.) p. 175; Williston on Sales, pars. 267, 268.
The learned counsel also contend that the “joint estimate” which was to be made each month for the purposes of the advance of $12.50 per 1,000 can take the place of the classification which it was agreed should be made by experts. But this was not the agreement of the parties, and the court can only enforce the contract they made; not make a new one for them.
Counsel also argue that the ownership of property may be transferred otherwise than by the contract of sale; and that if the said contract lacked one of the essential features of a sale and was not therefore a sale, this would be no reason why it should not have been translative of property; and that the parties having agreed that the lumber should become the property of plaintiff just as soon as advances were made upon it, this agreement is the law of the case, since there is nothing in it contrary to good morals or to prohibitory laws or public policy.
If the parties had so agreed, of course, the agreement would have to be enforced. But they did not so agree. The contract must be read as a whole, and, when so read, it shows very clearly that the so-called seller did not agree to transfer the property, and the so-called purchaser did not agree to acquire it, except at the price to be ascertained by the classification. To enforce any other contract than this would be to enforce a contract which the parties had no intention of making, did not make, and would not have made.
When they said that plaintiff was owner and vested with the title, it was with the nonexpressed, but necessarily implied, condition that the price would be ascertained in the manner agreed upon; and, therefore, *135 when this ascertainment became impossible, the condition upon which the contract was made failed, and necessarily the contract with it. This condition being the very basis of the contract, when it failed, the contract failed. The parties practically said that they consented to the contract, provided the price could be ascertained in the manner agreed on, and thereby they practically said that unless this could be done they did not consent to the contract. This condition was in the nature of a suspensive condition, the effect of which, as the term “suspensive” implies, is to suspend the operation of the contract. In Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 165, 46 South. 198, this court said:
“Article 2044 of the .Civil Code, relative to sales made under a suspensive condition, provides that ‘if the thing be entirely destroyed (before the event happens) without fault of the debtor, the obligation is extinguished.’ Marcade, commenting on a similar provision of the Code Napoleón, art. 1182, says:
“ ‘Our article does not express itself correctly when it says that the obligation of the vendor will be extinguished. The obligation cannot be extinguished, since it has never existed; what ought to have been said is that this obligation, as well as that of the vendee to pay the price, can no longer come into existence.’ ”
By what is here said, we see that, in a case like the present, where a sale is made on a condition that can never be realized, the legal situation is as if no contract had been entered into, so far as transfer of ownership is concerned.
In the foregoing argument we have dealt with this contract as if, so far as mere wording was concerned, it had unqualifiedly declared that the lumber should become the property of the so-called purchaser and the title vest in this purchaser; but even in its wording, apart altogether from its substance and necessary implications, it is very far from being thus unqualified. A contract must be read as a whole, and when this is done, a clause unqualified, express and explicit in itself, may be found to be qualified and limited by some other clause. Thus, in the present contract, this monthly payment of $12.50 per 1,000 is not called a partial payment, but an “advance” ; and this expression is utterly inconsistent with the idea of the title having finally passed, for then this money would not, and could not, be an advance, but necessarily a partial payment. And, again, the so-called seller is made to bind himself to insure the lumber for the benefit of the so-called purchaser, and not up to its full value, as would have naturally been done if the lumber had in reality belonged t'o this purchaser, but up to the amount “advanced” on it by this so-called purchaser. Evidently, if the parties had considered thaj; the lumber belonged in reality to this purchaser, they would have had no occasion to insert this insurance clause, but the purchaser would simply have, itself, insured the lumber, and in its own name, and for full value, and, itself, paid the premiums. Noteworthy also is the circumstance that the lumber was not to be paid for until delivered on railroad cars at the neighboring town of Melville, free of expense to the so-called purchaser.
Finally the learned counsel for plaintiff say that the plaintiff company certainly had an interest of some kind in this lumber ; and that, whatever this interest was, it could be insured by plaintiff; and that these policies should be held, at all events, to cover this interest.
The answer is that if the plaintiff company, instead of undertaking to insure this lumber as if to it belonging, had described their interest in it such as it was, and insured this interest, whatever it might be, the insurance contract would, no doubt, have been valid and enforceable; but that it chose to insure an interest it did not have, and therefore made an invalid contract, as a policy covering a particular interest cannot be made to serve for protecting some other and different interest.
*137 The judgment appealed from is set aside, and the suits are dismissed, at the cost of the plaintiff.
LAND, J., dissents.