169 So. 449

**ANDRUS et al. v. EUNICE BAND MILL CO., Inc.**

**No. 33469.**

May 25, 1936.

Rehearing Denied June 30, 1936.

Charles C. Jaubert, of Lake Charles, for appellants.

Pecot & Bauer, of Franklin, for appellee.

FOURNET, Justice.

Plaintiffs filed suit against the Eunice Band Mill Company, Inc., successors to the Roy O. Martin Lumber Company, to recover the sum of $29,595.58, alleged to be the amount due them under a contract of sale of timber.

Defendant filed exceptions of no right or cause of action which were sustained by the trial judge and the plaintiffs' suit was dismissed. The plaintiffs have appealed.

This suit is based on a contract dated November 5, 1926, under the terms of which plaintiffs sold all of the merchantable timber of certain kinds and dimensions suitable for sawmill purposes, located on their lands, at a certain and definite price per thousand feet for each particular kind of timber. The contract stipulates that the purchase price shall be paid "$3,000 cash" upon the acceptance of the contract, the balance to be paid every two weeks from acceptance, as the timber is cut and scaled, with the privilege granted to the vendee to reimburse itself for the $3,000 cash payment after $9,000 had been paid out of the purchase price of timber thereafter cut. The contract further provides that the purchaser should have eighteen months with-in which to cut, remove, and pay for the timber. The contract also contains the following clause:

"If at the expiration of eighteen (18) months there remains standing on said described lands, or otherwise, merchantable timber, suitable for saw mill purposes, said purchaser obligates itself to pay for said timber on the stumpage basis herein fixed, quantity to be established and determined by joint estimate, which shall be made within thirty (30) days of the expiration of said first eighteen (18) months. * * * The agreement of two of the three aforementioned estimators shall then be accepted as a basis of final settlement."

Plaintiffs alleged that timber was cut and paid for by the defendant under the terms of and during the period allowed by the contract, but that defendant declined to join the plaintiffs in making an estimate of the merchantable timber suitable for sawmill purposes which remained standing on the property as provided for in the contract; that an estimate of each kind of timber had been made and set out in plaintiffs' petition, showing the value thereof according to the prices fixed in the contract, aggregating the sum of $30,070.03; that they paid the taxes for the year 1927, amounting to $214.20, which, under the terms of the contract, were due by the defendant; and that after having credited defendant with the balance remaining in their (plaintiffs') hands from the cash deposit of $3,000, defendant still owed the amount sued for.

The exceptions of no cause or right of action are predicated upon the decisions

in the cases of Louis Werner Sawmill Co. v. O'Shee, 111 La. 817, 35 So. 919, and Charles Tiernan, et al. v. John Martin, et al., 2 Rob. 523.

In the Werner Case the defendant interposed exceptions of no right or cause of action to plaintiff's suit which sought to compel specific performance of a contract wherein it is provided that *"O'Shee agrees to sell and L. W. S. M. Co. agrees to buy all the lands of said O'Shee * * *.* The consideration to be one dollar and fifty cents per M. for each thousand feet of merchantable pine timber found on said lands. The * * * amount of money which L. W. S. M. Co. is to pay O'Shee for said lands, is to be arrived at by two estimators, one to be chosen by each of the parties to this agreement." The court maintained the exceptions on the ground that one of the requisites of a contract of sale is a fixed price, and although it was agreed in the contract that such a price should be fixed by two estimators, the estimators appointed having failed to agree, the contract was never completed and perfected and, therefore, of no effect.

In the Tiernan Case, supra, the court said:

*"It is one of the legal requisites for the perfection of a contract of sale, that that there shall be a fixed price.* Civ.Code, art. 2414; Wilson v. McHugh, 1 La. [380], 383; Walker et al. v. Fort et al., 3 La. 535. Pothier, Vente, Nos. 16 and 17. And although it may be agreed in the contract, that such price shall be fixed by the estimation of a third person, if this is not done, or it becomes impossible to do it, there is no price, and the contract remains imperfect." (Italics ours.)

And held: ·

"In this case, *it has been shown that the agreement cannot be perfected,* as originally contemplated between the parties, owing to Hall's death in insolvent circumstances, and to the fact of the creditors having, in the mean time, obtained judgments against him, which operate as a lien on the property." (Italics ours.)

Counsel for plaintiffs contends that the Werner and Tiernan Cases are not controlling in the instant case because in those cases the contracts were never perfected and completed and were, therefore, no contracts in law or in fact, but that the contract in the instant case was perfected and completed and the clause in controversy was not of the essence of the contract but an "accidental stipulation," within the meaning and contemplation of article 1764 of the Revised Civil Code, and cite in support thereof article 1901 of the Revised Civil Code; Blanks et al. v. Lephiew et al., 132 La. 545, 61 So. 615; Kent v. Davis Bros. Lumber Co., 122 La. 1046, 48 So. 451, 457; and Moore v. O'Bannon & Julien et al., 126 La. 161, 52 So. 253, 255.

"Contracts for the sale of standing timber, with varying stipulations as to price and as to the time in which the timber should be removed, have more than once been held by this court to be sales." Smith v. Huie-Hodge Lumber Co., 123 La. 959, 49 So. 655, 656. See, also, article 1920, Rev. Civ.Code; Lumber Co. v. Sheriff, 106 La.

414, 30 So. 902; Shepherd v. Davis Bros. Lumber Co., 121 La. 1011, 46 So. 999; Lee Lumber Co. v. Hotard, 122 La. 850, 48 So. 286, 129 Am.St.Rep. 368; Kent v. Davis Bros. Lumber Co., 122 La. 1046, 48 So. 451, 457.

In the case of Blanks et al. v. Lephiew et al., supra, the court held, as is expressed in syllabus No. 3:

"A contract providing that the owners of standing timber thereby sold it ʻto defendants for $3.50 a thousand feet, the quantity to be estimated by experts, and that, after paying $8,000, defendants might relieve themselves of all further liability, except for timber already cut or deadened by paying $500, subsequently modified to provide that the quantity of timber should be ascertained by the number of shingles manufactured from it, *was a sale of the timber and made defendants liable for the contract price,* since, while the original contract had no binding force as either party could have nullified it by declining to appoint an expert, this defect was cured by the supplemental contract, *and defendant's privilege of retiring from the contract by paying $500 was merely a resolutory condition which, as expressly provided in Rev. Civ.Code, art. 2045, did not suspend the contract or prevent it from having full effect.*" (Italics ours.)

Counsel for defendant called our attention to the holding by the court in that case to the effect that the contract as originally written in the Blanks Case had no binding effect, because either party could have nullified it by declining to appoint an expert. The terms and stipulations in the contract as originally drawn in that case presented the identical issue as that in the Werner and Tiernan Cases; the contract was not perfected, and the court properly held that the contract could not have been enforced as originally drawn.

In the case of Kent v. Davis Bros. Lumber Co., supra, the court declined to annul a contract whereby timber was sold at a stipulated price per thousand feet, *when and as cut,* although it contained no provision fixing a definite time within which to cut and remove the timber sold, and held that:

"The contract in this case covered all the pine trees of a certain description standing or being on a designated tract of land. Plaintiff consented to sell not prospectively, but presently, all of those particular trees, and the defendant also consented to buy, not prospectively, but presently, all of those particular trees. * * *

"It cannot be said that the price is uncertain because of the fact that it might so happen that an estimate made immediately after the agreement as to the number of trees might be erroneous, and therefore from that fact there might arise uncertainty as to the full price which would be ultimately received. *The price was fixed and not uncertain—50 cents per 1,000 feet for all the trees on the land of the size mentioned.* Should there be error in the estimate made of the trees, then the price fixed would simply be reduced to conform to the actual facts. * * *

"We do not understand these words as containing a 'suspensive condition' to a

sale and as postponing the creation of a contract of sale until the trees are cut. *These words refer not to the creation of a contract, but to the payments to be made under an agreement already agreed to. They do not reach back to the contract itself, but are what is known as 'accidental stipulations' in a contract."* (Italics ours.)

The case of Moore v. O'Bannon & Julien et al., supra, involved a contract whereby standing timber was sold for a certain amount in cash, the balance to be paid as the timber was cut, and in which it was agreed that the vendee should, within a delay fixed, build a sawmill within a certain distance of the timber, and make payments for the timber, when out, on pay days to be fixed by the vendee, at the mill. The court held:

*"The stipulations relating to the erection of the mill and the making of the payments there on pay days to be fixed are quoad the sale of the timber 'accidental,' being neither of the essence of the contract nor necessarily implied from its nature, but depending solely upon the will of the parties, regulated by the general rules applicable to all contracts. Civ.Code, art. 1764, par. 3.* Where the parties so agree, or, in some cases, where there is no agreement to the contrary, noncompliance with accidental stipulations may furnish good cause to annul a contract." (Italics ours.)

■ A mere reading of the contract conclusively shows that plaintiffs never intended to sell less than all of the merchantable timber of the kinds, sizes, and dimensions described in the contract and at

the price per thousand feet fixed therein. That is clearly evidenced by the very wording of the conveying clause, for it reads: "Vendors do hereby sell, convey and set over unto * * * purchaser, *all* the merchantable * * * timber * * * suitable for sawmill purposes, situated * * *." The clause regarding the making of an estimate of the timber remaining standing on the land is not of the essence of the contract, and, in our opinion, is an accidental stipulation within the meaning and contemplation of article 1764 of the Revised Civil Code. Kent v. Davis Bros. Lumber Co., supra.

■ The parties having agreed in their contract that the quantity of the timber remaining standing on their lands at the expiration of eighteen months from date thereof should be by estimation, this agreement "can not be revoked, unless by mutual consent of the parties, or *for causes acknowledged by law.* They must be performed with good faith." Article 1901, Rev.Civ.Code. (Italics ours.)

■ The quantity of the thing, though uncertain, if capable of being ascertained, is not a cause acknowledged by law for revoking or annulling a contract. Article 1886, Rev.Civ.Code.

We are of the opinion that the plaintiffs, having alleged a certain and definite quantity of timber remained standing on their lands, for which they are entitled to be paid at the price fixed in the contract, have the right to establish the quantity of the timber in accordance with their agreement.

For the reasons assigned, the judgment of the lower court is set aside and annulled; the exceptions of no right or cause of action are overruled; and the case is hereby remanded to the lower court to be proceeded with according to law and consistent with the views herein expressed; costs of this court to be paid by the defendant and appellee, all other costs to await the final outcome of this suit.

O'NIELL, C. J., absent.

ODOM, Justice (dissenting).

The quantity of timber removed from the land within eighteen months from the date of the contract was to be determined, after the timber was cut, by log scale at the river bank. The timber remaining on the land at the expiration of the eighteen months' period was to be sold on a stumpage basis, the quantity to be determined by an estimate made by two estimators, one to be appointed by the seller and the other by the purchaser. In case these two estimators could not agree on the quantity of timber remaining, they (the two estimators) were to appoint a third "competent, disinterested party, mutually agreeable." It is stipulated in the contract that: "The agreement of two of the three aforementioned estimators shall be accepted as a basis of final settlement."

It is provided that the estimate of the remaining timber should be made within thirty days after the expiration of the eighteen months' period, and that the payment for the amount of timber remaining should be made in a lump sum within thirty days after the estimate was completed and submitted, the purchaser to have twelve months' additional time in which to remove "any timber standing and purchased on the stumpage basis as aforesaid." The purchaser was to take all merchantable timber suitable for sawmill purposes. The estimate of the quantity of timber was to be based upon the measurement of the logs at the small end.

The contract, as relates to the sale of the timber which might be removed within the eighteen months' period, is altogether different from that which relates to the timber which remained standing on the land at the end of that time, in that the quantity of the timber removed within the eighteen months was to be determined by log scale and the quantity remaining at the end of that time was to be determined by an estimate. Plaintiff, by the present suit, is seeking to enforce that part of the contract relating to the sale of the timber which remained.

It is perfectly clear to me that this case falls squarely within the holding in the case of Louis Werner Saw Mill Company v. O'Shee, 111 La. 817, 35 So. 919, where it was held that where a tract of land was agreed to be sold at a price regulated by the quantity of timber on the land at a fixed price for each thousand feet, and the quantity of the timber was to be determined by estimates, the price was not definite or certain, as the Code requires, and that therefore the contract could not be enforced.

Justice Provosty, the organ of the court in that case, went at length and in great

detail into the reasons why such a contract is not enforceable. In support of his conclusions he cited our own Civil Code, Code Napoleon, and French authorities. The same reasoning and the same law are applicable to the present case.

It must be borne in mind that the timber remaining on the land at the end of the eighteen months' period was to be paid for in a lump-sum within thirty days after the estimates were made. The lump-sum price to be paid for the timber in this case corresponds to the price of the land in the O'Shee Case. In the O'Shee Case it was held that neither party under a contract of this kind could be compelled to appoint an estimator. In the present case if the parties appointed the estimators, as provided in the contract, it is not probable that they would ever agree as to the quantity of the timber, especially in view of the fact that the estimates were to be based upon the size of the logs at the small end. At best an "estimate" of timber is but a guess. It is conceivable that a practical timberman might go upon a tract of land, measure the trees and count them, and in that way reach an accurate and reliable conclusion as to the amount of timber on the land. But where the estimate is to be based upon the size of the logs at the small end, it would be wholly impractical, if not impossible, to reach anything like a definite conclusion.

Again, the estimate is to be based upon "merchantable" timber suitable for "sawmill purposes." This injects a new element into the basis for fixing the lump-sum price to be paid for the timber. In other words, it is left to the estimators to say whether a tree or log is merchantable or suitable for sawmill purposes.

Under the holding in the O'Shee Case I think this contract is not enforceable, and that the exception of no cause of action was properly sustained, and I therefore dissent from the majority holding.