William M. GILLESPIE, Sr., Plaintiff,

v.

W. A. RANSOM LUMBER COMPANY,
Defendant and Third-Party
Plaintiff,

W. D. CANN, Sr., Third-Party
Defendant.

Civ. A. No. 1323.

United States District Court
E. D. Louisiana, Baton Rouge Division.

May 18, 1955.

Sanders, Miller, Downing, Rubin & Kean, Ben R. Downing, Jr., R. Gordon Kean, Jr., Baton Rouge, La., for plaintiff.

Breazeale, Sachse & Wilson, Victor A. Sachse, Baton Rouge, La., Edward Stoulig, Kenner, La., for defendant.

Harrison G. Bagwell, Baton Rouge, La., for third-party defendant.

WRIGHT, District Judge.

The third-party defendant entered into a contract with the plaintiff on October 1, 1953 "For the purpose of selling cypress timber" purchased by the third-party defendant from the Natalbany Lumber Company to the plaintiff. The agreement [1] provided that the plaintiff

---

1. The agreement reads:
"This agreement entered into between W. D. Cann, Sr. Party of the first part and W. M. Gillespie, Sr. Party of the second part. For the purpose of selling cypress timber purchased by party of the first part from the Natalbany Lumber Co., to party of the second part.

"Party of the second part agrees to pay $35.00 (thirty five dollars) per M feet doyle scale for all down or dead timber and $40.00 (forty dollars) per M feet for the standing or green timber.

"Party of the second part agrees to scale the heart and the full scale on the dead timber, but to pay only for the heart

would pay $35 per 1,000 feet for all down or dead timber to be found on tract in question, and $40 per 1,000 feet for standing or green timber. Under the agreement, the plaintiff was to remove the timber from the tract to a ramping ground provided by the third-party defendant where the logs were to be scaled, and the logs were not to be moved from the ramping ground until they were paid for.

On October 5, 1953, Gillespie and his crew went to the Natalbany tract in Ascension Parish, Louisiana, where the timber in suit was located, and began logging operations which continued at the sole cost and expense of Gillespie, and with the full knowledge and consent of the third-party defendant, Cann, until November 6, 1953. In addition to paying all costs of expenses incident to the logging operations, Gillespie advanced Cann $250 on the contract price during this period.

Following these operations, the logs were ramped on property belonging to a third person provided by Cann and a joint scale of the timber was made by representatives of the Natalbany Lumber Company and Gillespie. As a result of the joint scale, it was determined that 93,765 board feet of cypress timber had been logged and ramped.

After the scaling a dispute arose between the parties and Gillespie refused to pay for the timber according to the contract. Gillespie testified that by mistake he had cut and ramped some timber of the Natalbany Lumber Company which had not been purchased from that company by Cann, and that, therefore, he suggested he withhold $5 per thousand board feet until this matter had been clarified. Cann, however, testified that Gillespie refused to pay for the timber on the basis of the scaling, contending that only 81,000 board feet of timber had been ramped. Cann further testified that Gillespie at no time suggested that some

timber had been cut on the wrong tract. His testimony in this regard is supported by the testimony of the representatives of Natalbany Lumber Company who were present with Gillespie when Cann paid Natalbany for the timber. Giles, the Natalbany witness, testified that Gillespie made no reference whatever to timber having been cut on the wrong tract.

On November 17, 1953, Gillespie received a letter from Cann's attorney giving Gillespie five days to pay for the timber and advising that unless he did, the timber would be sold to someone else. Not hearing from Gillespie, after the five-day delay, Cann did sell, on November 27, 1953, the ramped logs to the defendant herein, W. A. Ransom Lumber Company. Before purchasing the timber, Ransom contacted the Natalbany Lumber Company and was advised that the timber in suit was cut from its tract and had been sold by it to Cann. Ransom paid Cann in full for the timber by check of November 28, 1953 in the amount of $7,501.20, and began to remove it from the ramping ground to its sawmill outside New Orleans. On December 3, 1953, Gillespie saw Ransom equipment at the site of the ramped logs, engaged in the operation of moving them. He called Mr. Ransom and advised Ransom that the logs belonged to him, Gillespie, and not Cann. Mr. Ransom telephoned Mr. Cann's attorney and was assured that the logs belonged to Cann. The removal operations continued and this suit followed.

Plaintiff, citing and relying heavily upon the case of Andrus v. Eunice Band Mill Co., 185 La. 403, 169 So. 449, contends that he purchased the timber in suit from Cann, that the title to the timber passed to him at the time of his contract with Cann on October 1, 1953, and that he reduced the logs to possession by going on the Natalbany tract and logging the timber out to the ramping ground. The defendant, citing and relying heavily on the case of Louis Werner Sawmill Co.

scale. Said scale to be a joint scale between the Natalbany Lumber Co., and party of the second part. Logs to be

paid for before moving from ramping grounds."

v. O'Shee, 111 La. 817, 35 So. 919, contends that Gillespie's contract with Cann was not an act of sale of timber but was a contract to purchase the timber after it was ramped and scaled as provided in the contract. Defendant contends that title to the timber did not pass from Cann to Gillespie at the time of the contract, and therefore, Cann, not Gillespie, owned the timber at the time Cann made the sale thereof to the Ransom Lumber Company.

In resolving the question which this case presents, it is not necessary to consider the apparent conflict between the cases decided by the Louisiana Supreme Court, Andrus v. Eunice Band Mill Co., supra, and Louis Werner Sawmill Co. v. O'Shee, supra, as suggested by counsel, for the reason that this dispute can be resolved simply by reference to the elementary principles of sales outlined in the Louisiana Civil Code.

■ Cann's contract of October 1, 1953 with Gillespie related to movable as well as immovable property, the down or dead timber referred to in the contract being movable, and the standing timber immovable. LSA–C.C. art. 465; LSA–R.S. 9:1103. Under Article 2266 [2] of the Louisiana Civil Code, unrecorded contracts affecting immovable property are "utterly null and void, except between the parties thereto." Coyle v. Allen, 168 La. 504, 122 So. 596. Since, as far as the record shows, the Gillespie-Cann contract was unrecorded, that part of it relating to standing timber was utterly null and void as to Ransom, and Ransom, by virtue of his purchase from Cann, acquired title to the logs cut from standing timber.

The down or dead timber included in the Gillespie-Cann contract, being movable property, is covered by Article 1922 [3] of the LSA–Civil Code which provides that the consent to transfer movable property vests the ownership of the property in the buyer, but "this effect is strictly confined to the parties until actual delivery of the object." LSA–C.C. art. 1922. If the seller retains possession and by a second contract transfers the ownership of the property to another person who gets possession, the second transferee is the owner, provided he is in good faith.

■ The facts here show that Ransom purchased the timber in suit from Cann in good faith. Cann had a good reputation in the lumber business and Ransom had previously had satisfactory dealings with him. The timber, being ramped on land adjoining the Natalbany tract, was obviously cut from that tract. Ransom, before he purchased the timber from Cann, confirmed Cann's ownership of the timber by contacting Natalbany. He paid a fair price therefor. After he had paid the price and begun moving the timber from the ramping ground, he received a telephone call from Gillespie, who theretofore was unknown to him in the deal, in which Gillespie stated that he had purchased the timber from Cann. Ransom then contacted Cann's attorney and was assured that Gillespie was not

---

2.  LSA–Civil Code Article 2266 reads:
    "All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
    "The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."
    See also LSA–Civil Code Articles 2262, 2242.

3.  LSA–Civil Code Article 1922 reads:
    "With respect to movable effects, although, by the rule referred to in the two last preceding articles, the consent to transfer vests the ownership of the property in the obligee, yet this effect is strictly confined to the parties until actual delivery of the object. If the vendor, being in possession, should, by a second contract, transfer the ownership of the property to another person, who gets the possession before the first obligee, the last transferee is considered as the owner, provided the contract be made on his part *bona fide*, and without notice of the former contract."
    See also Louisiana Civil Code Article 2247.

**14**

the owner of the timber. Ransom not only acted in good faith in the transaction, he acted as a reasonably prudent man familiar with the timber business in the area would have acted under the circumstances.

Nor did Gillespie acquire possession of the timber prior to the sale thereof to Ransom. It is true that Gillespie logged the timber, but he ramped the logs on land provided by Cann and the contract between him and Cann provided that the timber was not to be moved from the ramping grounds until paid for. Obviously, therefore, under the contract, possession of the logs was to pass to Gillespie when he paid the price and moved them from the ramping grounds. He neither paid the price nor moved them. Under the circumstances and under Article 1922 of the LSA–Civil Code, Ransom Lumber Company's purchase of the timber in good faith, plus the delivery thereof to it pursuant to the purchase, makes it, not Gillespie, the owner. It may well be that Gillespie has a valid claim against Cann arising out of his contract with him, but Gillespie has asserted no such claim in this action.

Judgment accordingly.