William M. GILLESPIE, Sr.,
Appellant,

v.

W. A. RANSOM LUMBER COMPANY,
Appellee.

No. 15789.

United States Court of Appeals
Fifth Circuit.

June 15, 1956.

Rehearing Denied July 26, 1956.

R. Gordon Kean, Jr., Baton Rouge, La., Ben R. Downing, Jr., Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, La., for appellant.

Victor A. Sachse, Baton Rouge, La., Edward J. Stoulig, Kenner, La., Breazeale, Sachse & Wilson, Baton Rouge, La., Stoulig & Rogyom, Kenner, La., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

The district court held that the appellee was not liable to the appellant for the conversion of cypress logs which the appellant claimed to own. The timber was grown on lands owned by the Natalbany Lumber Company in the Spanish Lake Swamp in Ascension Parish, Louisiana. Natalbany sold the timber to W. D. Cann, Sr., who, in turn, on October 1, 1953, entered into a contract with appellant in its entirety as follows:

"This agreement entered into between W. D. Cann, Sr. Party of the first part and W. M. Gillespie, Sr. Party of the second part. For the purpose of selling cypress timber purchased by party of the first part from the Natalbany Lumber Co., to party of the second part.

"Party of the second part agrees to pay $35.00 (thirty-five dollars) per M feet doyle scale for all down or dead timber and $40.00 (forty dollars) per M feet for the standing or green timber.

"Party of the second part agrees to scale the heart and the full scale on the dead timber, but to pay only for the heart scale. Said scale to be a joint scale between the Natalbany Lumber Co., and party of the second part. Logs to be paid for before moving from ramping grounds."

On October 5th, appellant sent a logging crew into the swamp to cut the standing timber and haul all of the logs and ramp them on land belonging to a farmer, from whom Cann had secured such permission. By November 6th, all of the timber had been cut, and the logs hauled and ramped. Appellant had paid the costs and expenses incident to these

logging operations amounting to approximately $3,000.00 and had advanced Cann $250.00 on the price of the timber. On November 13th, the ramped logs were scaled by appellant's son and a representative of the Natalbany Lumber Company at 93,765 board feet.

A disagreement then arose as to the payment of the purchase price by appellant to Cann, either on the ground that logging had occurred on Natalbany land not covered by the Natalbany agreement with Cann, or on the ground that appellant had thought Cann was making $5.00 per thousand profit, but had learned that Cann had an additional $5.00 per thousand profit. The cause of the disagreement seems to us immaterial to the issues in this case. In any event, appellant was bound to pay Cann the purchase price fixed by their agreement, heretofore quoted, before he moved the logs from the ramping grounds.

On November 17th, appellant received a letter from Cann's attorney giving him five days to pay for the logs and advising that unless he did they would be sold to someone else. Appellant did not reply. Thereafter, on November 27th, Cann undertook to sell the ramped logs to appellee Ransom. Before making the purchase, Ransom contacted the Natalbany Lumber Company and was advised that the timber was cut from its tract and had been sold by it to Cann. Ransom had no notice at that time of any claim on the part of appellant, Gillespie. On November 28th, Ransom paid Cann in full for the logs in the amount of $7,-

501.20 and began to haul them from the ramping grounds to Ransom's sawmill outside New Orleans.

On December 3rd, Gillespie discovered the hauling operation and telephoned Ransom, president of the lumber company, telling him that the logs belonged to him, Gillespie. He was advised by Ransom that the logs had been purchased in good faith. Ransom then telephoned Cann's attorney and was assured that the logs belonged to Cann. The remaining logs were subsequently removed to Ransom's mill, and this suit followed.

Appellant Gillespie insists that he was the owner of and in possession of the logs and that the sale of the logs to Appellee Ransom by Cann was void. Appellee Ransom, on the other hand, maintains that it purchased the logs in good faith from Cann, that at that time Cann had title to the logs as between Cann and Gillespie, and, if not then, certainly so as to any other person, that possession of the logs was in Cann and Ransom required a valid title thereto by its purchase from Cann.

For the passage of title from Cann to Gillespie, appellant relies on Articles 2439 and 2456 of the Louisiana Civil Code, LSA.[1] Appellee Ransom, on the other hand, urges that Gillespie refused to pay the agreed price and that thereafter Cann was not bound by the contract of sale.

Be that as it may, both parties agree that, if Cann retained legal possession of the logs, he could, under Articles 1922 and 2247 of the LSA–Civil Code,[2] pass

---

1. "Art. 2439. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.

"Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."

"Art. 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

2. "Art. 1922. With respect to movable effects, although, by the rule referred to in the two last preceding articles, the consent to transfer thus the ownership of the property in the obligee, yet this effect is strictly confined to the parties until actual delivery of the object. If the vendor, being in possession, should, by a second contract, transfer the ownership of the property to another person, who gets the possession before the first obligee, the last transferee is considered as the owner, provided the contract be made on his part *bona fide*, and without notice of the former contract."

good title to a bona fide purchaser. The district court [132 F.Supp. 13], for reasons quoted, in the margin,[3] found that Ransom was a bona fide purchaser from Cann, and we agree. The district court further found[4] that Cann retained possession of the logs. Appellant Gillespie concedes in brief "that the decisive issue in this case is the question of legal possession of the logs at or prior to the time of Cann's attempted sale to Ransom."

Many articles of the Louisiana Civil Code relate to the ownership and possession of things.[5] Especially important here, we think, is Article 2477:

"The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer."

Clearly, the concluding provision of the contract between Cann and Gillespie[6] was intended to protect Cann, and for that protection to be effective it should be held that Gillespie did not have "the power and possession" until he paid for the logs. As to third persons, therefore, the sale from Cann to Gillespie was not complete while possession remained in Cann. Under Articles 1922 and 2247, footnote 2, *supra*, while possession remained in Cann, he could, and we think did, sell to Ransom, a bona fide purchaser.

It would unduly prolong this opinion to discuss the many cases relied on by the appellant,[7] and those relied on by

"Art. 2247. Sales or exchanges of movable property are void against *bona fide* purchasers and creditors unless possession is given before such *bona fide* purchaser or creditor acquires his right by possession. What a delivery of possession is depends on the nature of the property; it may be constructive or actual; the delivery of the key of a store in which it is contained, or an order accepted by the person in whose custody it is held, if at the order of the vendor, is good evidence of delivery."

3. "The facts here show that Ransom purchased the timber in suit from Cann in good faith. Cann had a good reputation in the lumber business and Ransom had previously had satisfactory dealings with him. The timber, being ramped on land adjoining the Natalbany tract, was obviously cut from that tract. Ransom, before he purchased the timber from Cann, confirmed Cann's ownership of the timber by contacting Natalbany. He paid a fair price therefor. After he had paid the price and begun moving the timber from the ramping ground, he received a telephone call from Gillespie, who theretofore was unknown to him in the deal, in which Gillespie stated that he had purchased the timber from Cann. Ransom then contacted Cann's attorney and was assured that Gillespie was not the owner of the timber. Ransom not only acted in good faith in the transaction, he acted as a reasonably prudent man familiar with the timber business in the area would have acted under the circumstances."

4. "It is true that Gillespie logged the timber, but he ramped the logs on land provided by Cann and the contract between him and Cann provided that the timber was not to be moved from the ramping grounds until paid for. Obviously, therefore, under the contract, possession of the logs was to pass to Gillespie when he paid the price and moved them from the ramping grounds. He neither paid the price nor moved them."

5. See Articles 488, 496, 1922, 1924, 1951, 2247, 2438, 2439, 2456, 2458, 2462, 2477, 2478, 2555, 3426, 3427–3430.

6. "Logs to be paid for before moving from ramping grounds."

7. Dockson Gas Co. v. S & W Const. Co., La.App., 12 So.2d 847; Mossy Motors v. McRedmond, La.App., 12 So.2d 719; Andrus v. Eunice Band Mill Co., 185 La. 403, 169 So. 449; Harmon v. Moore, La. App., 169 So. 174; Oliver v. Home Service Ice Co., La.App., 161 So. 766; Reeves v. G. & G. Pumping Co., La.App., 151 So. 679; Leopold v. Bradford-Hutchinson Lumber Co., 172 La. 110, 133 So. 379; Edgwood Co. v. Falkenhagen, 151 La. 1072, 92 So. 703; Penick & Ford v. Waguespack & Haydel, 148 La. 39, 86 So. 605; Frank I. Abbott Lumber Co. v. Home Ins. Co., 140 La. 130, 72 So. 841; Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193; Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co., 107 La. 251, 31 So. 736; State ex rel. Bulkley v. Whited & Wheless, 104 La. 125, 28 So. 922; Dav-

288

appellee.[8]  We think that the judgment of the district court was right and it is Affirmed.

enport v. Adler, 52 La.Ann. 263, 26 So. 836; Landeche v. Sarpy, 37 La.Ann. 835; Terrill v. Hays, 24 La.Ann. 428; Campbell and Rickarby v. Penn., 7 La.Ann. 371; Shuff v. Morgan, 9 Mart., O.S., 592.

8.  T. A. Gaskin Lumber Co. v. Airline Lumber Co., D.C., 127 F.Supp. 461; International Paper Co. v. Rivers, La.App., 35 So.2d 677; Andrus v. Eunice B and Mill Co., 185 La. 403, 169 So. 449; Kohler v. Huth Const. Co., 168 La. 827, 123 So. 588; Coyle v. Allen, 168 La. 504, 122 So. 596; Donoven & Daley v. Travers & Hermann, 122 La. 458, 47 So. 769; Louis Werner Sawmill Co. v. O'Shee, 111 La. 817, 35 So. 919; Tiernan v. Martin, 2 Rob. 523; Copley v. Dowell, 1 Rob. 26; Stern's Auction Exchange v. Feldman, 5 La.App. 137; Tanneret v. Edwards, 18 La.Ann. 606; Marshall v. Morehouse, 14 La.Ann. 689.